MARY HENDRICKS (Deceased), DOUGLAS HENDRICKS (Husband), DOUGLAS TYE HENDRICKS (Son), Employee, Plaintiffs v. HILL REALTY GROUP, INC., Employer; SELF-INSURED (KEY RISK MANAGEMENT SERVICES, INC.), Servicing Agent, Defendant

No. COA98-406

(Filed 29 December 1998)

**Workers' Compensation— average weekly wage—computation—exceptional circumstances**

An order of the Industrial Commission in a workers' compensation case calculating the average weekly wage of a realtor for whom death benefits would be paid was affirmed where the Commission's finding that the fifth method in N.C.G.S. § 97-2(5) was the only method which was fair and which would result in a calculation of decedent's average weekly wage which most nearly approximated the amount of wages she would be earning were it not for her injury and resulting death was supported by competent evidence.

Appeal by defendant from judgment entered 16 January 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 November 1998.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Stephen J. Grabenstein, for plaintiffs-appellees.*

*Russell & King, P.A., by Gene Thomas Leicht, for defendant-appellant.*

WALKER, Judge.

Mary Hendricks, the decedent, was employed as a real estate agent by Hill Realty Group (Hill) who maintained workers' compensation insurance for its agents. On 23 April 1994, Mrs. Hendricks sustained an injury in the course of her employment, which resulted in her death and Hill assumed liability for the injury. Mrs. Hendricks had worked for Hill since April 1992, and her earnings were based solely on commissions.

Hill began making death benefit payments to plaintiffs (decedent's next of kin) under N.C. Gen. Stat. § 97-38 at a rate of $255.89 per week which was based on an average weekly wage of $383.81.

The average weekly wage was determined by averaging the earnings of Mrs. Hendricks over the 52 weeks prior to her death.

The plaintiffs requested a hearing before the deputy commissioner contending that basing the average weekly wage on the 52 weeks prior to her death was unfair and that exceptional reasons existed to use a shorter period of time. In her opinion and award, the deputy commissioner concluded that exceptional reasons did exist and awarded death benefits of $437.70 based on an average weekly wage of $656.61 per week. The average weekly wage was computed using the fifth method of computation provided in N.C. Gen. Stat. § 97-2(5) and based on the earnings of decedent for 1994 divided by the number of weeks worked in 1994. The deputy commissioner ordered that Hill make a lump sum payment of the difference between $437.70 and $255.89 for the 158 weeks of payments already made and ordered that the remaining payments be made at the higher rate.

Hill appealed to the Commission which, in its opinion and award on 16 January 1998, affirmed the deputy commissioner. The Commission made the following findings of fact:

1. The deceased employee, Mary Hendricks, began working for defendant-employer in April of 1992. When she began working for defendant-employer, she was a novice with no experience and no training in real estate. Her prior business experience had been as a sitter for elderly individuals in need of care and attention.

. . .

3. Modest production goals were set for decedent by defendant-employer in 1992. These goals called for her to earn $9,000.00 in the months remaining in 1992 following her hire.

4. Decedent actually earned $3,603.00 in 1992. This substantial shortfall was not unusual for someone just starting out in the real estate business, as it takes a substantial amount of time for an individual to begin generating a regular stream of business in the real estate industry.

5. Production goals for 1993 called for $16,000.00 in earnings. Decedent again fell short of this goal as her actual earnings for 1993 were $13,007.50.

HENDRICKS v. HILL REALTY GROUP, INC.

[131 N.C. App. 859 (1998)]

6. In late 1993 and in the months of 1994 before her death, the deceased employee began taking steps to increase her productivity and earnings.

7. In December of 1993 decedent purchased a home computer to use in her work as a real estate sales person. Prior to this time, decedent did not have access to a personal computer at home for use in her work.

8. Decedent's use of the telephone as a business tool increased in 1994 prior to her death. During this period she would typically make telephone calls regarding her work whenever she was home between the hours of 7:00 a.m. and 11:00 p.m.

9. Decedent's business activity increased greatly in 1994 over what it had been in 1993. At the time of her death, decedent was working eight to ten hours a day, six to seven days a week. This was a substantial increase over her level of work activity in 1992 and 1993.

10. The above-mentioned activities had a direct impact on decedent's productivity and earnings in 1994. Decedent's earning goal for 1994 was $17,748.00. From 1 January 1994 through the date of her death on 23 April 1994, decedent earned income totaling $9,849.22.

. . .

12. Decedent was able to increase her productivity and earnings despite the fact that she was out of the state with her mother in Kentucky for ten days in early 1994, and the fact that the period from the previous Thanksgiving to mid-January is historically a very slow time in the real estate industry.

13. Decedent's increased earnings in 1994 reflected the naturally extended process of slowly building a successful real estate practice. At the time of her death, decedent's hard work and professionalism were beginning to pay off as she had established a good reputation in the community and was becoming more confident in her duties and how she was performing them.

Hill assigns as error the Commission's finding that exceptional circumstances existed to justify the use of the fifth method of determining average weekly wage found in N.C. Gen. Stat. § 97-2(5). Hill argues that there was insufficient evidence of exceptional circumstances to justify the use of decedent's earnings in 1994 (fifteen

weeks) to compute the average weekly wage where the statute provides that the preferred method is to average the previous 52 weeks of earnings. We disagree and affirm the Commission.

"When the Court of Appeals reviews a decision of the full Commission, it must determine, first, whether there is competent evidence to support the Commission's findings of fact and, second, whether the findings of fact support the conclusions of law." *McAninch v. Buncombe County Schools*, 347 N.C. 126, 131, 489 S.E.2d 375, 378 (1997); *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). "[T]he Industrial Commission is made the factfinding body, and the rule is . . . that the findings of fact made by the Commission are conclusive on appeal . . . when supported by competent evidence." *Rice v. Chair Co.*, 238 N.C. 121, 124, 76 S.E.2d 311, 313 (1953); *Inscoe v. Industries, Inc.*, 292 N.C. 210, 215, 232 S.E.2d 449, 452 (1977).

The method used by the Commission to compute the decedent's average weekly wage is set out in N.C. Gen. Stat. § 97-2(5):

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (Cum. Supp. 1997). The intent of this statute is to make certain that the results reached are fair and just to both parties. *Liles v. Electric Co.*, 244 N.C. 653, 94 S.E.2d 790 (1956). "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision." *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (*quoting Liles*, 244 N.C. at 660, 94 S.E.2d at 796).

Here, the conclusion by the Commission that exceptional reasons exist is supported by the competent evidence in the record and the findings made by the Commission. The decedent made certain changes in the way that she performed her job over the closing months of 1993 and the beginning of 1994 including the purchase of a personal computer for use in her work, increased use of the telephone as a business tool, and increased number of hours worked each week. The results of these positive changes were illustrated by the increased commissions earned during the first fifteen weeks of 1994 just before her death. While defendant argues that the result

obtained by the Commission is unfair, we note that the Commission concluded that the fifth method authorized in N.C. Gen. Stat. § 97-2(5) "is the only method which is fair and which would result in a calculation of decedent's average weekly wage which most nearly approximates the amount of wages she would be earning were it not for her injury and resulting death." As this finding is supported by competent evidence, it is binding on this Court. For these reasons, the order of the Commission is

Affirmed.

Judges JOHN and McGEE concur.