LEONARD LARRAMORE, Employee, Plaintiff-Appellee v. RICHARDSON SPORTS LIMITED PARTNERS, d/b/a CAROLINA PANTHERS, Employer, and LEGION INSURANCE COMPANY, Carrier, Defendant-Appellants

No. COA99-1578

(Filed 29 December 2000)

1. Workers' Compensation— average weekly wage—football player

The Industrial Commission did not err in a Workers' Compensation action in its determination of the average weekly wage of a professional football player where plaintiff signed a contract which provided a signing bonus of $1,000 and a salary of

LARRAMORE v. RICHARDSON SPORTS LTD. PARTNERS

[141 N.C. App. 250 (2000)]

$85,000 for the period 27 April 1995 to 28 February 1996; the contract specified that plaintiff was not entitled to the contract amount until he was added to the active roster; plaintiff was injured during the preseason camp and was not added to the roster; and the Commission computed plaintiff's average weekly wage by adding the signing bonus and contract amount and dividing by 52 weeks. At least some competent evidence supported the Commission's conclusion that this method was the only appropriate method under the circumstances and would most nearly approximate the amount the injured employee would be earning were it not for the injury.

**2. Workers' Compensation— football player—continued employment without injury—question of fact for Commission**

An Industrial Commission finding of fact in a workers' compensation action that plaintiff-football player would have played for the Carolina Panthers during his contract year but for his injury was supported by circumstantial evidence in the record. The determination of whether plaintiff would have continued in his employment is a question of fact most appropriately resolved by the Industrial Commission.

**3. Workers' Compensation— medical treatment—request for approval—time frame**

An Industrial Commission award for medical expenses in a workers' compensation action was remanded where the Commission's order lacked any finding as to the reasonableness of the time frame within which plaintiff requested treatment approval.

**4. Workers' Compensation— temporary partial disability— football player**

There was evidence in the record in a workers' compensation action to support the Industrial Commission's conclusion that plaintiff-football player was entitled to temporary partial disability where there was evidence to support the conclusion that his injury resulted in loss of his wage earning capacity; that evidence shifted the burden to the employer to establish that the employee could have obtained higher earnings; defendants made no such showing; and, while no doctor expressly prohibited plaintiff from playing professional football, plaintiff's treating physicians noted

that a symptomatic disc would contraindicate playing profes-sional football.

Judge GREENE dissenting.

Appeal by defendants from opinion and award entered 4 August 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 November 2000.

*Lore & McClearen, by R. James Lore for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe and Sharon E. Dent for defendant-appellants.*

FULLER, Judge.

Defendant Richardson Sports Limited Partners, d/b/a Carolina Panthers, and Legion Insurance Company appeal an order and award of the Industrial Commission awarding plaintiff Leonard Larramore temporary partial disability compensation, temporary permanent disability compensation, and reimbursement for medical expenses.

On 27 April 1995 plaintiff signed a contract with the Carolina Panthers professional football team to play football during the Panthers' 1995-96 season. The contract provided for a $1,000.00 sign-ing bonus and a salary of $85,000.00 for the period 27 April 1995 to 28 February 1996. The contract further specified that plaintiff was not entitled to the contract amount until plaintiff was officially added to the Panthers' active roster. Under the standard National Football League players contract which constituted part of the agreement, in the event plaintiff was injured during the professional season and could not play for the remainder of the year, the contract specified that plaintiff would still receive the full contract amount. The con-tract expressly provided the Panthers with discretion to unilaterally terminate plaintiff if his football skills were unsatisfactory.

Prior to a determination of which players would make the active roster, contract players, including plaintiff, participated in pre-season football camps for which they were paid a per diem amount for expenses and work performed. Plaintiff participated in such a camp lasting from 30 May 1995 to 9 June 1995. However, on 8 June 1995 plaintiff injured his back when he slipped and fell during practice. Plaintiff was excused from the final day of the camp, and he returned home to Jacksonville, Florida.

LARRAMORE v. RICHARDSON SPORTS LTD. PARTNERS

[141 N.C. App. 250 (2000)]

On 14 July 1995 plaintiff again reported to the Panthers' training camp where team doctor Donald D'Alessandro performed a preseason physical on plaintiff. Dr. D'Alessandro noted that plaintiff's lumbar strain had begun to resolve, and he released plaintiff for practice. The following day, 15 July 1995, Panthers management cut the team roster, and various contract players were excused from the team without having made the active roster. Plaintiff was one of the players excused from employment. Upon plaintiff's dismissal, Dr. D'Alessandro performed an exit examination on plaintiff and recommended plaintiff rest his lower back and consult a spine surgeon should he experience continued symptoms.

Plaintiff returned to Jacksonville, and on 4 August 1995 plaintiff was examined by orthopaedist Fady El-Bahri. Dr. El-Bahri performed an MRI on plaintiff which revealed slight disc herniations and evidence of degenerative disc disease. Dr. El-Bahri recommended plaintiff undergo conservative treatments of physical therapy, nerve studies, and epidural injections for two to three months. Plaintiff submitted Dr. El-Bahri's bill to the Panthers' team trainer, but defendants refused to pay.

Plaintiff returned to Dr. El-Bahri on 25 July 1996 complaining of increased pain and constant numbness and tingling in both legs. Dr. El-Bahri diagnosed plaintiff as having a "bilateral sacroiliac joint sprain," and recommended plaintiff undergo a microdiscectomy.

Following his dismissal from the Panthers, plaintiff did not obtain any other employment in football for the 1995-96 season. Plaintiff received unemployment assistance for approximately three months until beginning work as a teacher's assistant. Plaintiff also worked as a temporary service employee. Plaintiff tried out for a player position with the Dallas Cowboys in January 1997, but was not selected for the team.

In an opinion and award filed 4 August 1999, the Full Commission concluded plaintiff suffered a compensable injury when he fell and injured his back during practice on 8 June 1995. The Commission determined plaintiff was temporarily totally disabled from 9 June 1995 through 14 July 1995. The Commission calculated plaintiff's average weekly wage as $1,653.85, yielding a weekly compensation rate of $478.00, minus appropriate credits to defendants. The Commission further concluded plaintiff was entitled to temporary partial disability from 8 June 1995 to the time of the order, for a total of 300 weeks, at a rate two-thirds of the difference between $1,653.85

and plaintiff's post-injury wages. Defendants were additionally ordered to reimburse plaintiff for expenses incurred or to be incurred for treatment by Dr. El-Bahri. Defendants appeal.

---

Defendants bring forth three assignments of error on appeal: (1) the Commission erred in determining plaintiff's average weekly wage as $1,653.85, yielding a maximum compensation rate of $478.00; (2) the Commission erred in awarding plaintiff payment for medical expenses incurred or to be incurred for plaintiff's treatment by Dr. El-Bahri; and (3) the Commission erred in awarding plaintiff temporary partial disability compensation under N.C. Gen. Stat. § 97-30 (1999).

It is well-established that our standard of review of an opinion and award of the Commission is limited to a determination of "(1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000) (citation omitted). " '[T]he Industrial Commission is the fact finding body and . . . the findings of fact made by the Commission are conclusive on appeal, . . . if supported by competent evidence. . . . This is so even though there is evidence which would support a finding to the contrary.' " *Hunter v. Perquimans County Bd. of Educ.*, 139 N.C. App. 352, 355, 533 S.E.2d 562, 564, (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 49, 283 S.E.2d 101, 104 (1981)), *cert. denied*, 352 N.C. 674, —— S.E.2d ——, No. 415P00 (N.C. Supreme Court 6 Oct. 2000).

I.

[1] By their first assignment of error, defendants allege the Commission erred in determining plaintiff's average weekly wage under the Worker's Compensation Act to be $1,653.85. N.C. Gen. Stat. § 97-2(5) (1999) defines "average weekly wage" and enumerates procedures for its computation:

> 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury. . . . Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both

parties will be thereby obtained . . . . *But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.*

G.S. § 97-2(5) (Emphasis added).

The Commission concluded that, given the circumstances and short duration of plaintiff's employment, it was appropriate "to resort to such other method of computing average weekly wages as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Pursuant to G.S. § 97-2(5), the Commission determined this method would be to add the contract amount of $85,000.00 and the $1,000.00 signing bonus, and divide the total by fifty-two weeks, yielding an average weekly wage of $1,653.85.

Defendants first argue that the Commission's conclusion was erroneous in that the Commission should not have used the final "exceptional reasons" method of calculating plaintiff's average weekly wage. Specifically, defendants contend no such exceptional circumstances existed to permit the use of an alternative method.

This Court addressed an identical argument in *Hendricks v. Hill Realty Group, Inc.*, 131 N.C. App. 859, 861-62, 509 S.E.2d 801, 803 (1998), *disc. review denied*, 350 N.C. 379, 536 S.E.2d 73 (1999). The appellant in *Hendricks* argued there was insufficient evidence of exceptional circumstances to justify the Commission's use of an alternative method to determining average weekly wages. *Id.* In upholding the Commission's use of an alternative method, this Court noted that "[t]he intent of [G. S. § 97-2(5)] is to make certain that the results reached are fair and just to both parties. . . . 'Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls the decision.' " *Id.* at 862, 509 S.E.2d at 803 (quoting *McAninch v. Buncombe County Schools*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997)).

The Commission in *Hendricks* determined that an "exceptional reasons" approach was " 'the only method which is fair and which would result in a calculation of decedent's average weekly wage

which most nearly approximates the amount of wages she would be earning were it not for her injury and resulting death.' " *Id.* at 863, 509 S.E.2d at 803. Finding competent evidence to support this finding, this Court held the Commission's determination binding on appeal. *Id.* at 863-64, 509 S.E.2d 801, 803-804.

In the present case, the Commission likewise concluded that under the circumstances, the only appropriate method, and that which would "most nearly approximate the amount which the injured employee would be earning were it not for the injury," would be to divide plaintiff's $86,000.00 contract amount by fifty-two. We hold this determination to be supported by at least some competent evidence in the record, and thus, binding upon this Court. Plaintiff's contract and the circumstances of this appeal are indeed exceptional, and we therefore will not substitute our judgment for that of the Commission. *See, e.g., Christian v. Riddle & Mendenhall Logging,* 117 N.C. App. 261, 264, 450 S.E.2d 510, 513 (1994) ("due to the unique nature of [plaintiff's] employment, it is difficult to make a precise calculation of his income, and the Commission was therefore justified in resorting to an alternative method of determining his average weekly wage as provided by G. S. § 97-2(5).").

**[2]** Defendants further argue that the Commission's computation of plaintiff's average weekly wage is erroneous because it was based on an unsupported finding of fact. Defendants assert the computation was based on the Commission's finding that the "reasonable inference from the facts is that, but for plaintiff's injury, plaintiff would have played for the Carolina Panthers during the contract year and would have earned the contract pay of $85,000.00 plus a $1,000.00 signing bonus." Defendants contend this finding was not supported by any competent evidence, and thus, the conclusion that plaintiff's average weekly wage is $1,653.85 was unsupported.

We acknowledge as true defendants' argument that the record does not contain direct evidence establishing to a certainty that, but for plaintiff's injury, he would have made the Panthers' active roster. However, just as the Commission is entitled to use circumstantial evidence in determining the existence of a causal link between an injury and a worker's employment, we believe the Commission is entitled to the use of circumstantial evidence here. *See Brafford v. Brafford's Construction Co.,* 125 N.C. App. 643, 647, 482 S.E.2d 34, 37 (1997) ("Circumstantial evidence of the causal connection between the occupation and the disease is sufficient.").

LARRAMORE v. RICHARDSON SPORTS LTD. PARTNERS

[141 N.C. App. 250 (2000)]

The record here contains circumstantial evidence which could lead to an inference that plaintiff's injury caused his dismissal from the Panthers. The Commission made findings of fact, which are supported by the record, that plaintiff played semi-professional football after college, and that one year later, plaintiff was signed to play for the Buffalo Bills professional football team. Plaintiff suffered an ankle injury while with the Buffalo Bills, and he was placed on an inactive roster. Moreover, the Commission found that once dismissed from the second pre-season training camp on 8 June 1995, plaintiff was given a conditioning goal of weight loss to 300 pounds by the next camp. Although the Commission made no specific findings, record evidence suggests plaintiff was unable to meet this weight loss goal due to an inability to perform proper conditioning.

While this Court may disagree with the inference which the Commission drew, the determination of whether, but for his injury, plaintiff would have continued in his employment with the Panthers is a question of fact most appropriately resolved by the Commission. *See, e.g., Young v. Hickory Bus. Furn.,* 137 N.C. App. 51, 55, 527 S.E.2d 344, 348 (2000) (citation omitted) (Commission vested "with full authority to find the essential facts in a workers' compensation case. . . and it is the responsibility of the Commission, not the reviewing court, to weigh the evidence of causation and to assess its credibility."). Given the circumstantial evidence present in the record, we decline to substitute our judgment for that of the Commission, and we therefore uphold its finding that plaintiff's injury prevented him from maintaining his employment with the Panthers. This assignment of error is overruled.

II.

[3] By their second assignment of error, defendants argue the Commission erroneously awarded plaintiff payment for medical expenses incurred or to be incurred for plaintiff's treatment by Dr. El-Bahri. Specifically, defendants assert plaintiff failed to request the Commission's approval for treatment by Dr. El-Bahri within a reasonable time, and the Commission failed to make any relevant findings on the issue.

Under the Worker's Compensation Act, an injured employee has the right to procure his own physician so long as the Commission approves such treatment. N.C. Gen. Stat. § 97-25 (1999); *Schofield v. Tea Co.,* 299 N.C. 582, 586, 264 S.E.2d 56, 60 (1980) (citations omit-

[141 N.C. App. 250 (2000)]

ted). A request for the Commission's approval must be made within a reasonable time after the employee seeks the treatment. *Schofield*, at 593, 264 S.E.2d at 63. The Commission is required to make specific findings as to whether the employee requested approval within a reasonable time. *Scurlock v. Durham County Gen. Hosp.*, 136 N.C. App. 144, 152, 523 S.E.2d 439, 444 (1999) (citation omitted).

In *Scurlock*, this Court observed that the Commission's failure to make findings as to the reasonableness of the time within which a request for treatment approval is made constitutes grounds for remand on the issue:

> Here, plaintiff began seeing Dr. Scott in June of 1991, but made no specific request for authorization with the Commission until 15 August 1994, more than three years after her visits began. Though we profess doubts as to how a three-year delay could be reasonable, ultimately this is not for us to determine. Rather, the Industrial Commission must make specific findings as to whether approval was sought within a reasonable time after her treatments with Dr. Scott began. The Full Commission made no such findings here, requiring a remand for that determination.

*Id.* at 152, 523 S.E.2d at 444 (citations omitted); *see also, Braswell v. Pitt County Mem. Hosp.*, 106 N.C. App. 1, 7, 415 S.E.2d 86, 89 (1992) ("Insofar as the Commission in this case failed to address whether plaintiff requested a change of physician within a reasonable time, we remand this matter to the Commission for further findings on this issue.").

Clearly, the decision as to whether plaintiff in this case requested treatment approval within a reasonable time under the circumstances is within the sole province of the Commission. While the Commission determined plaintiff's treatment by Dr. El-Bahri to be reasonably necessary, the order of the Commission lacks any finding as to the reasonableness of the time frame within which plaintiff requested any such approval. While plaintiff's request may have been reasonably timely in light of defendants' protracted denial of the Commission's jurisdiction over this matter, only the Commission may make such findings. We therefore remand this issue to the Commission to make proper findings as to whether plaintiff requested approval of Dr. El-Bahri's treatment in a reasonably timely fashion as required by statute.

## III.

**[4]** Defendants' third and final assignment of error alleges the Commission erred in awarding plaintiff temporary partial disability compensation under G.S. § 97-30. Defendants contend plaintiff failed to meet his burden of establishing his disability past 14 July 1995. While defendants correctly assert that the record contains competent evidence tending to support a conclusion that plaintiff was not disabled for the length of time determined by the Commission, we must defer to the Commission's finding of disability where supported by *any* competent evidence in the record. *See, e.g., Dancy v. Abbott Labs.*, 139 N.C. App. 553, 534 S.E.2d 601 (2000).

This Court recently noted that an injured employee is disabled for purposes of the Worker's Compensation Act if the injury results in an " 'incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' " *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 131, 532 S.E.2d 583, 588 (2000) (quoting *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993)). Thus, disability under the Act is defined as " 'the impairment of the injured employee's earning capacity rather than physical disablement.' " *Id.* (quoting *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457). The *Bond* court further observed that an injured employee may establish disability by producing evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Id.*

In the present case, there is evidence in the record which would support a conclusion that plaintiff's injury resulted in the loss of his wage-earning capacity. We have previously upheld as supported by competent evidence the Commission's determination that, but for his injury, plaintiff would have received the Panthers contract amount of $86,000.00. The Commission also found plaintiff was unable to obtain other professional football employment for the remainder of the 1995-96 season. Plaintiff attempted similar employment with the Dallas Cowboys in January 1997, but was not selected for the team.

Rather, the Commission found, and the record supports, that subsequent to his injury and dismissal from the Panthers, plaintiff performed various low-paying jobs, including work as a teacher's assistant at the pay rate of $6.50 per hour, and as a temporary service employee at the rate of $8.10 per hour. Such evidence, while not dispositive of disability, shifts the burden to the employer to establish

[141 N.C. App. 250 (2000)]

that the employee could have obtained higher earnings. *Bond,* 139 N.C. App. at 131, 532 S.E.2d at 588 (post-injury earnings from delivering automobiles competent evidence of earning capacity where employer presented no evidence that claimant could obtain employment with higher earnings). Defendants made no such showing. Moreover, although defendants argue that no doctor expressly prohibited plaintiff from playing professional football, all three of plaintiff's treating physicians noted that a symptomatic disc would contraindicate plaintiff's playing professional football. Indeed, on 25 July 1996, Dr. El-Bahri diagnosed plaintiff as suffering from "a bilateral sacroiliac joint sprain" for which Dr. El-Bahri sought to perform a microdiscectomy on plaintiff.

Again, while the judgment of this Court may differ from that of the Commission, it is the Commission that is wholly vested with authority to find the essential facts, weigh the evidence, and assess its credibility. *Young,* 137 N.C. App. at 55, 527 S.E.2d at 348. The record contains some competent evidence which would support the Commission's conclusion that plaintiff was entitled to temporary partial disability, and we therefore will not disturb this determination on appeal.

The order of the Commission awarding plaintiff disability compensation is hereby affirmed; this matter is remanded to the Commission for further findings as to whether plaintiff's request for approval for treatment by Dr. El-Bahri was reasonably timely.

Affirmed in part, reversed and remanded in part.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority that plaintiff met his burden of proving a "temporary partial disability" within the meaning of the Workers' Compensation Act. I, therefore, dissent.

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (1999). Disability refers to "a diminished capacity to earn money rather than physical infirmity." *Arrington v. Texfi Indus.,* 123 N.C. App. 476, 478,

473 S.E.2d 403, 405 (1996). To establish a disability, a claimant must prove:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that [plaintiff's] incapacity to earn was caused by [his] injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). A plaintiff may meet this burden by producing "evidence that he has obtained other employment at a wage less than that earned prior to the injury." *Russell v. Lowes Pro. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

In this case, the Commission concluded "plaintiff is entitled to temporary partial disability compensation for the period from June 8, 1995, to the present and continuing for a total of 300 weeks." The Commission made findings of fact regarding the wages earned by plaintiff subsequent to his injury; however, the Commission did not make any findings of fact comparing plaintiff's post-injury wages to any pre-injury wages. The Commission's findings of fact, therefore, do not support a conclusion that plaintiff was disabled under the Workers' Compensation Act due to his inability to earn after his injury "the same wages he had earned before his injury in the same employment . . . [or] any other employment." Accordingly, I would reverse the opinion and award of the Commission.

Even assuming plaintiff is disabled under the Workers' Compensation Act, I disagree with the majority that the record contains competent evidence to support the trial court's finding of fact that "but for plaintiff's injury, plaintiff would have played for the Carolina Panthers during the contract year and would have earned the contract pay of $85,000.00 plus a $1,000.00 signing bonus." The record shows plaintiff would have earned the contract pay of $85,000.00 only if plaintiff was officially added to the active roster of the Carolina Panthers. Plaintiff, however, was excused from the team without having made the active roster. There is no evidence in the record that plaintiff was excused as a result of his injury. Evidence of plaintiff's prior employment record as a professional football player and his attendance at the pre-season training camp of the Carolina Panthers is not "circumstantial evidence which could lead to an inference that plaintiff's injury caused his dismissal from the Panthers." I,

therefore, would hold the Commission's finding of fact that "but for plaintiff's injury, plaintiff would have played for the Carolina Panthers during the contract year and would have earned the contract pay of $85,000.00 plus a $1,000.00 signing bonus" is not supported by competent evidence in the record. *See Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 126, 532 S.E.2d 583, 585 (2000) (appellate review of Commission's findings of fact is limited to whether findings of fact are supported by competent evidence). Accordingly, the Commission erroneously relied on this finding of fact when computing the amount of plaintiff's compensation under N.C. Gen. Stat. § 97-2(5) and N.C. Gen. Stat. § 97-30.