***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies in part and reverses in part the Deputy Commissioner's Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the Deputy Commissioner hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendants and Brent Allen Hincher (hereafter "decedent") at all relevant times herein.
3. One Beacon Insurance Company and American Employers' Insurance Company were the carriers on the risk at all relevant times herein.
4. Decedent's average weekly wage was at least $519.23 per week on or about July 9, 1997, yielding a compensation rate of at least $346.17.
5. Decedent sustained an injury by accident arising out of and in the course of his employment with defendants on July 9, 1997, and said injury by accident caused decedent's death.
6. The parties stipulated the following documents into evidence:
a. Stipulated Exhibit 1 — marriage certificate of decedent and Marsha Ann Hincher
b. Stipulated Exhibit 2 — death certificate of decedent
c. Stipulated Exhibit 3 — birth certificates of Elliott Allen Hincher and Joshua Brent Hincher
d. Stipulated Exhibit 4 — Industrial Commission Form 22, with attachments
7. The issues to be determined by the Commission are what is decedent's average weekly wage, are plaintiffs entitled to attorney fees and/or sanctions from defendants pursuant to N.C. Gen. Stat. § 97-88.1, and is Joshua Brent Hincher entitled to lifetime benefits.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On July 9, 1997, decedent suffered a compensable injury by accident arising out of and in the course of his employment with defendants. As a direct result of said injury by accident, decedent was killed.
2. At the time of death, decedent was survived by his wife, Marsha Ann Hincher, to whom he was married on September 4, 1992. Decedent and Marsha Ann Hincher had two biological children born of their marriage, twin sons, Elliott Allen Hincher and Joshua Brent Hincher, born February 12, 1993. Decedent was not survived by any other person who was either wholly or partially dependent upon him for their support.
3 Elliott Allen Hincher and Joshua Brent Hincher will reach the age of 18 on February 12, 2011. Joshua Brent Hincher has cerebral palsy and may not be able to support himself due to physical disability.
4. Marsha Ann Hincher is the mother and natural guardian of Elliott Allen Hincher and Joshua Brent Hincher.
5. At the time of his death, decedent had been employed by defendants since July 9, 1997.
6. Decedent had an annual salary of $25,000.00 and received a raise in May 1997, increasing his pay to $30,000.00 per year. It is undisputed that decedent would have continued to receive $30,000.00 per year but for his death. The Full Commission finds that the significant raise so shortly before decedent's death constitutes an exceptional reason rendering the calculation of average weekly wage based on the pre-raise compensation unfair to decedent and his heirs. The amount attributable to the average weekly wage from decedent's base salary is $576.92 ($30,000.00 divided by 52 weeks).
7. In addition to his $30,000.00 salary, decedent received a matching contribution to the company's 401K plan. From the time decedent received the above-mentioned raise, the matching contribution was $28.85 per week. However, because there is no evidence of record concerning vesting of the 401K plan, this matching contribution is not included in the calculation of decedent's average weekly wage.
8. Decedent received a $3,000.00 bonus at the end of 1996. However, because the evidence is speculative whether decedent would have received a bonus at the end of 1996 and, if so, the amount of the bonus, the Commission did not include any year-end bonus in the calculation of decedent's average weekly wage.
8. Decedent was given the use of a Ford Taurus during the entire term of his employment. He used this company car to commute to work, approximately eight miles each way, for a total of 32 miles per day, an average of one week per month. Additionally, decedent was allowed to use the company car for personal use which consisted of family activities averaging 50 miles per week. Defendants required no reimbursement for the commuting or for the personal use. In 1996 and 1997 the mileage reimbursement rate in effect by the Industrial Commission was $.25 per mile. Therefore, the personal use of the company car, including commuting an average of one week per month, averaged 90 miles per week (160 miles commuting and 200 miles personal use per month divided by four weeks) and had a value of $22.50 per week (90 x $.25).
9. Decedent's job required a significant amount of travel, averaging approximately three weeks per month, most of which covered the entire Monday through Friday work week. Upon the commencement of each trip, decedent was given an envelope containing cash for his anticipated lodging, meal and fuel expenses. At the end of the trip, the company required decedent to turn in receipts for lodging and fuel expenses and to return any unused allowance for lodging and fuel. The meal allowance consisted of $6.50 per meal for up to three meals per day, for a daily total of $19.50. Decedent was not required to spend the money on meals or to document that expense. Rather, he was allowed to use this meal allowance in any way he chose. The weekly value to decedent of this allowance is $73.13 ($19.50 per day for 15 days/month = $292.50 divided by four weeks).
10. Based on all of the above, the Full Commission finds that decedent's average weekly wage was $672.55 which yields a weekly compensation rate of $448.39.
14. Pursuant to Deputy Commissioner Glenn's interim Order filed December 10, 2003, defendants paid the accrued benefits due plaintiffs on February 11, 2004. Thereafter, defendants have not paid weekly benefits due plaintiffs under the interim Order.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Decedent was killed as a result of a compensable injury by accident arising out of and in the course of his employment with defendants on July 9, 1997. N.C. Gen Stat. § 97-2(6).
2. Marsha Ann Hincher, Elliott Allen Hincher, and Joshua Brent Hincher were wholly dependent upon decedent at the time of his death and are therefore entitled to death benefits, share and share alike. N.C. Gen Stat. §§ 97-38, 97-39. Decedent did not leave any other persons who were either wholly or partially dependent upon decedent for support. N.C. Gen. Stat. § 97-39. Therefore, Marsha Ann Hincher, Elliott Allen Hincher and Joshua Brent Hincher are the only persons entitled to take the death benefits in this matter. Marsha Ann Hincher is the mother and natural guardian of the two minor children, Elliott Allen Hincher and Joshua Brent Hincher.
3. Under N.C. Gen. Stat. § 97-2(5), compensation for a worker's injury is based on plaintiff's average weekly wage. The dominant intent of N.C. Gen. Stat. § 97-2(5) is to base compensation on the normal income which the employee derived from his employment and to ensure that the results are fair and just to both employer and employee. N.C. Gen. Stat. § 97-2(5);Joyner v. Oil Co., 226 N.C. 519, 146 S.E.2d 447 (1966); Barber v. GoingWest Transp., Inc., 134 N.C. App. 428, 517 S.E.2d 914 (1999).
4. N.C. Gen. Stat. § 97-2(5) establishes an order of preference for the calculation of average weekly wage. The primary method for determining average weekly wage is to divide by 52 the total wages the employee earned for the 52 weeks preceding the date of the injury. Bond v. FosterMasonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583 (2000). In cases in which the preferred first method under N.C. Gen. Stat. § 97-2(5) is not appropriate, the statute provides three additional methods to use in the calculation of a worker's average weekly wage. The fifth method set forth in the statute is to be used when warranted by "exceptional circumstances." Postell v. BD Construction Co., 105 N.C. App. 1, 7,411 S.E.2d 413, 416, dis. rev. denied, 331 N.C. 286, 417 S.E.2d 253
(1992). The final method set forth in N.C. Gen. Stat. § 97-2(5) cannot be used unless there is a finding that unjust results would occur by using the previous methods. Liles v. Electric Co., 244 N.C. 653, 94 S.E.2d 790
(1956).
5. The first four methods for calculation of decedent's average weekly wage as provided by the first paragraph of N.C. Gen. Stat. § 97-2(5) do not adequately address the facts in this case and would not provide a fair and just result to all parties. See, Hendricks v. Hill RealtyGroup, Inc., 131 N.C. App. 859, 509 S.E.2d 801 (1998), disc. rev.denied, 350 N.C. 379, 536 S.E.2d 73 (1999). In addition to his annual salary of $30,000.00, decedent had additional compensation of a cash meal allowance of $19.50 per day for 15 days per month and personal use of a company car which is valued at $22.50 per week. The fifth method authorized in N.C. Gen. Stat. § 97-2(5) is the only method which is fair and results in a calculation of decedent's average weekly wage which most nearly approximates the wages he would have earned if not for his injury and resulting death. Id. Decedent had an average weekly wage of $672.55, which yields a weekly compensation rate of $448.39.
6. Marsha Ann Hincher is entitled to receive one-third of the death benefits at the rate of $149.46 per week for a period of 400 weeks beginning July 9, 1997. The minor children, Elliott Allen Hincher and Joshua Brent Hincher, are each entitled to receive one-third of the death benefits in the amount of $149.46 per week for 400 weeks beginning July 9, 1997 or until each child reaches the age of 18, whichever occurs last. N.C. Gen Stat. § 97-38. Defendants shall pay said benefits to Marsha Ann Hincher, the mother and natural guardian of the minor children, for the use and maintenance of Elliott Allen Hincher and Joshua Brent Hincher.
7. Joshua Brent Hincher is not entitled to lifetime benefits. N.C. Gen Stat. § 97-38.
8. Plaintiffs are entitled to the payment of the medical expenses incurred for the treatment of decedent's injuries sustained as a result of the injury by accident. N.C. Gen Stat. § 97-25.
9. Plaintiffs are entitled to payment by defendants of $2,000.00 in funeral expenses. N.C. Gen Stat. § 97-38.
10. Pursuant to the December 10, 2003 Order, plaintiffs are entitled to a 10% penalty for the late payment of accrued compensation which was due January 22, 2004 but not paid until February 11, 2004 and the late payment of weekly compensation thereafter which defendants failed to pay. N.C. Gen. Stat. §§ 97-18(e), (g); Rule 703, North Carolina Workers' Compensation Rules.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to attorney's fees approved below, defendants shall pay death benefits to Marsha Ann Hincher at the rate of $149.46 per week for 400 weeks beginning July 9, 1979. All sums that have accrued shall be paid in one lump sum. Defendants shall be entitled to a credit for payments made pursuant to the interim Order filed December 10, 2003.
2. Subject to attorney's fees approved below, defendants shall pay to Marsha Ann Hincher as the parent and natural guardian of Elliott Allen Hincher and Joshua Brent Hincher, minors, for the use, benefit and maintenance of Elliott Allen Hincher and Joshua Brent Hincher, death benefits at the rate of $149.46 per week for each minor child beginning July 9, 1979 for a period of 400 weeks or until each child reaches the age of eighteen, whichever occurs last. All sums that have accrued shall be paid in one lump sum. Defendants are entitled to a credit for payments made pursuant to the interim Order filed December 10, 2003.
3. Defendants shall pay a 10% penalty for the late payment of accrued compensation from the date it was due on January 22, 2004 until it was paid on February 11, 2004 and on weekly compensation due plaintiffs under the interim Order.
4. Defendants shall pay burial expenses not exceeding $2,000.00 to the person or persons, if any, entitled thereto.
5. Defendants shall pay for all medical expenses incurred by plaintiffs as a result of decedent's injury by accident.
6. A reasonable attorney's fee in the amount of 25% of all compensation paid to plaintiffs is hereby awarded to plaintiffs' counsel. The amount that has accrued shall be deducted and paid directly to plaintiffs' attorney. Thereafter, plaintiffs' attorney shall receive every fourth compensation check due plaintiffs under this Award.
7. Defendants shall pay the costs of this action.
This the 18th day of November, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb