McCULLOUGH, Judge.
Defendants appeal from the opinion and award of the North Carolina Industrial Commission. The Full Commission made the following findings of fact:
1. Plaintiff was employed by Greer, Inc. as a truck driver. On February 4, 2000, plaintiff suffered an injury to his left shoulder in the course of his employment with Greer, Inc. This injury occurred when Reliance Insurance Company was the carrier on the risk. This injury was accepted as compensable by way of a Form 60. Pursuant to this form, plaintiff began receiving compensation in the amount of $531.88 per week based upon an average weekly wage of $797.83.
2. Plaintiff was treated by Dr. William Gramig and eventually underwent a surgical repair of a torn rotator cuff. With the consent of his treating physician, plaintiff returned to work for defendant on a trial basis in June, 2001. Dr. Gramig placed physical restrictions on the plaintiff during the trial return to work. Due to these restrictions and the lack of available work, plaintiff worked fewer than full-time hours. Based on his reduced hours and earnings, the plaintiff received temporary partial disability compensation from Reliance Insurance Company/NCIGA. His part-time work was at approximately the same hourly wage rate as his former full-time work. Thus, while his average weekly wage did not change, his earnings changed because he worked fewer hours.
3. Subsequently, on September 1, 2001 while working fewer than 40 hours a week, plaintiff sustained a compensable injury to his left knee. At this time, North American Security was the carrier on the risk. Plaintiff's claim was accepted as compensable via a Form 63. Defendant North American Security paid plaintiff 2/3rds of the part-time wages he had been earning while on his trial return to work rather than 2/3rds of his average weekly wage of $797.83. From and after the date of the second accident, Reliance discontinued paying weekly disability benefits. Plaintiff has not been able to earn wages as a consequence of his September 1, 2001 injury and has not yet reached maximum medical improvement.
4. On March 20, 2002, Dr. Gramig rendered an opinion that plaintiff had reached maximum medical improvement with respect to his left shoulder and assigned a 20% permanent partial impairment rating to his left arm. Dr. Gramig also assigned permanent restrictions of no overhead lifting with the left shoulder, no lifting over 30 pounds on the left, and recommended that plaintiff avoid repetitive shoulder activity.
5. Subsequently, plaintiff reached a settlement for his left shoulder claim with the North Carolina Insurance Guaranty Association, who had taken over Reliance Insurance Company's claims following their insolvency. On September 9, 2002, Special Deputy Commissioner Matthew D. Harbin approved the Compromise Settlement Agreement in the amount of $45,000.00. In the Compromise Settlement Agreement is the statement, "Employer-Defendant contends that plaintiff is no longer entitled to partial disability benefits due to his receipt of benefits for a separate, unrelated injury pursuant to N.C. Gen. Stat. § 97-34."
6. Plaintiff filed for hearing in this matter prior to settling his claim with Reliance. In this claim plaintiff was seeking compensation based upon an average weekly wage of $797.83. North American Security took the position that plaintiff established a new average weekly wage of $373.38 per week because that was what he was earning for part time employment during his trial return to work, when he suffered an injury while North American Security was on the risk.
****
8. North American Security contends that to hold it liable for compensation based on an average weekly wage of $797.83 per week would not be a "fair and just result" as contemplated by N.C. Gen. Stat. § 97-2(5). Additionally, North American Security contends that such a holding would violate the legislative intent and public policy of the Workers' Compensation Act by serving as a deterrent to the employment of physically impaired persons. Finally, North American Security argues that such a holding would allow plaintiff to recover twice for the same loss of earning capacity. All of these arguments are without merit.
9. Plaintiff had been released to return to light duty from his initial injury and had been placed on light duty by Greer. However, due to a slow-down in the business of Greer, and because plaintiff had not reached maximum medical improvement, plaintiff was only permitted to work 20 hours per week as opposed to the 40 hours per week he had been working at the time of his initial injury.
10. Reliance in behalf of Greer was required to pay plaintiff when he returned to light duty at fewer hours the difference between what he was actually able to earn and what he was earning at the time of his initial injury, but no longer than 300 weeks subsequent to his injury date of February 4, 2000.
11. The N.C. Workers' Compensation Act provides five methods for calculating a worker's average weekly wage. The fifth method, involving injuries to volunteer firemen, is not applicable here. The first method is to divide the worker's earnings over the immediately preceding 52 weeks in the employment in which he was working at the time of the injury by 52. The second method is used where the employment prior to the injury extended over a period of fewer than 52 weeks. Under the second method, earnings during that period are divided by the number of weeks and parts thereof during which the employee earned wages; provided, results fair and just to both parties will be thereby obtained. The third method is to be used where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined. The third method requires calculating the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. Where none of the first three methods work because they are unfair either to the employer or to the employee, a fourth method is used. Under the fourth method, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury. N.C. Gen. Stat. § 97-2(5).
12. The first statutory method of calculating average weekly wage cannot be used because the injured worker did not work the entire 52 weeks preceding the September 1, 2001, injury due to his injuries from the February 4, 2000, compensable accident. The second method would not be fair to the employee because his earnings during the weeks he did work were less than his customary earnings because of an economic downturn and because he had not reached maximum medical improvement from the February 4, 2000, accident. The third method would be unfair to both the employer and the employee because no similar worker was identified and no evidence was taken with regard to such a worker's wages. A method that would be fair to both the employer and to the employee would be to multiply the hourly wage earned by the employee just before the September 1, 2001, accident by the average number of hours he normally worked but for an economic downturn and but for his not having reached maximum medical improvement from his first injury. That method would yield an average weekly wage of $797.83 and a compensation rate of $531.88.
13. By accepting the $45,000.00 lump sum benefit from the insurance guaranty fund, plaintiff does not double dip when he receives temporary total disability payments from North American Security. The $45,000.00 was paid by the insurance guaranty fund to avoid further litigation and neither party to the settlement ascribed any amount to any particular issue that was at stake in the litigation.
Based on those findings of fact, the Full Commission made the following conclusions of law:
1. Plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer on September 1, 2001. As a direct result of his injury by accident plaintiff became unable to earn wages. N.C. Gen. Stat. § 97-2(6). It is appropriate to use the fourth method under N.C. Gen. Stat. § 97-2(5) to compute plaintiff's average weekly wage under the facts of this case. The fourth method is:
But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
Plaintiff's average weekly wage as of the September 1, 2001 injury by accident was $797.83, yielding a compensation rate of $531.91 per week. N.C. Gen. Stat. § 97-2(5). Early v. Basnight & Co., 214 N.C. 103, 198 S.E. 577 (1938).
2. Plaintiff is entitled to weekly compensation of $531.91 from American Security from September 1, 2001, until plaintiff returns to work earning wages. So long as any wages plaintiff earns is less than $797.83 per week, American Security is responsible for wage loss pursuant to N.C. Gen. Stat. § 97-30 for the times therein stated.
****
5. Plaintiff is entitled to have the defendants pay for all medical treatment that is related to his compensable injury so long as such treatment may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
Based on these findings of fact and conclusions of law, the Full Commission awarded plaintiff total disability benefits at the rate of $531.91 per week continuing until plaintiff has returned to work earning the same or greater wages as he was receiving at the time of his disability. The Commission also required defendants to pay 8% interest from 9 December 2002, medical expenses caused by plaintiff's compensable injury, a reasonable attorney's fee, and the costs of this action. Defendants appeal. On appeal, defendants argue that the Full Commission erred by (1) making findings of fact that are not supported by competent evidence and (2) concluding that North American Security was liable for all of plaintiff's compensation rate. We disagree and affirm the opinion and award of the Full Commission.
I. Findings of Fact
Defendants argue that the Full Commission erred because there is not competent evidence to support its findings of fact.
The standard of review in this case is limited to "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Full Commission is the "sole judge of the weight and credibility of the evidence[.]" Id. at 116, 530 S.E.2d at 553. An appellate court reviewing a workers' compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight." Anderson v. Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). "The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Id. If there is any evidence at all, taken in the light most favorable to plaintiff to support it, the finding of fact stands, even if there is evidence going the other way. Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999). Defendants argue that finding of fact 9 is not supported by competent evidence. Finding of fact 9 indicates that plaintiff had an initial injury and plaintiff's employer, Greer, placed plaintiff on light duty. It also mentions that plaintiff was only allowed to work 20 hours per week instead of the 40 hours per week he had been working at the time of his initial injury.
Competent evidence in the record supports this finding of fact. In Stipulation 7, the parties agreed that plaintiff suffered an earlier injury to his shoulder on 4 February 2000. The parties also agreed in Stipulation 11 that plaintiff returned to work in a light duty position on or about 8 June 2001. Finally, Stipulation 11 indicates that plaintiff worked 20 hours per week during this trial period.
Defendants also contend that finding of fact 2 is not supported by competent evidence. Finding of fact 2 mentions that Dr. William Gramig treated plaintiff, that plaintiff returned to work on a trial basis in June of 2001, and that Dr. Gramig placed physical restrictions on plaintiff. It also indicates that plaintiff worked fewer than full-time hours causing his earnings to change.
Once again, competent evidence in the record supports this finding. The parties stipulated that Dr. Gramig was plaintiff's physician. They also agreed that plaintiff returned to work on a trial basis with a 50-pound overhead lifting limit. Finally, the parties concurred that plaintiff's earnings were only $378.38 per week because he was only working 20 hours per week during the trial period. We overrule this assignment of error.
II. Liability of North American Security
In their remaining assignment of error, defendants contend that the Full Commission erred in concluding that North American Security was liable for all of plaintiff's compensation rate.
In essence, defendants argue that the Full Commission's decision regarding average weekly wage calculations is contrary to established legal principles. The provision which addresses the computation of average weekly wages is N.C. Gen. Stat. § 97-2(5) (2003). This statute provides five methods for calculating a worker's average weekly wage and lists an order of preference as to which method should be applied if practicable. Id. Ordinarily, whether the results reached in computing the average weekly wage will be fair and just to both parties is a question of fact, and in such a case, the Commission's finding of fact controls the decision. Hendricks v. Hill Realty Group, Inc., 131 N.C. App. 859, 862, 509 S.E.2d 801, 803 (1998), disc. review denied, appeal dismissed, 350 N.C. 379, 536 S.E.2d 73 (1999).
The first method of calculation is to divide the worker's earnings over the immediately preceding 52 weeks in the employment in which he or she was working by 52. N.C. Gen. Stat. § 97-2(5). In the present case, the Full Commission noted that the first method could not be used because plaintiff did not work the entire 52 weeks preceding the 1 September 2001 injury. The second method of calculation is used where the employment prior to the injury extended over a period of fewer than 52 weeks. Id. Under this method, earnings during that period are divided by the number of weeks and parts thereof during which the employee earned wages. Id. This method may be used as long as the result is fair and just to both parties. Id. In this case, the Full Commission found that this method would not be fair to the employee where his earnings during the weeks he did not work were less than his customary earnings because he had not reached maximum medical improvement from the 4 February 2000 accident.
The third method of calculation is to use the wages of a similar employee during the 52 weeks prior to the injury. Id. The Full Commission found that this method would be unfair to the employer and the employee because no similar worker was identified and there was no evidence adduced regarding what a similar worker's wages would be.
Where none of the first three methods work because they would be unfair to the employer or the employee, a fourth method is used. N.C. Gen. Stat. § 97-2(5) provides that in those cases, "such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." Here, the Full Commission found that "[a] method that would be fair both to the employer and to the employee would be to multiply the hourly wage earned by the employee just before the September 1, 2001, accident by the average number of hours he normally worked but for. . . his not having reached maximum medical improvement from his first injury." As we have indicated, whether a result will be fair and just to both parties is a question of fact, and in such a case, the Commission's finding of fact controls the decision. Hendricks, 131 N.C. App. at 862, 509 S.E.2d at 803.
In the present case, the stipulated evidence supports the Full Commission's findings of fact. The parties agreed that plaintiff worked less than 52 weeks in the trial return to work period prior to the injury, was working in a light duty position with lifting restrictions, and had not reached maximum medical improvement from the first injury. Since plaintiff worked less than 52 weeks prior to the injury, this supports the Full Commission's determination that the first method does not apply. The fact that plaintiff had not reached maximum medical improvement supports the Commission's finding that the second method would be unfair to plaintiff. The third method was not applicable because no similar worker was identified and there was no evidence indicating what a similar worker's wages would be. Finally, the stipulations documenting that plaintiff was in a light duty position with lifting restrictions support the Commission's finding that a fair method would be to use the employee's hourly wage and the number of hours he normally worked but for his not having reached maximum medical improvement.
Since the Full Commission made detailed findings regarding what would be fair and just to both parties and those findings are supported by competent evidence, we overrule this assignment of error.[1]
We have considered defendants' other arguments and have determined that they are without merit. After careful review of the record, briefs, and transcript, we conclude that the Full Commission acted properly in all respects. Therefore, the opinion and award is
Affirmed.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).

The fifth method of calculation applies to injuries of volunteer firemen. Since plaintiff is not a volunteer fireman, the Full Commission was correct in declining to use the fifth method.