***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. PMA Group is the carrier on risk.
4. Plaintiff's average weekly wage was $467.92 yielding a compensation rate of $311.96.
5. Plaintiff alleges that on July 28, 2002 he sustained a disabling low back injury by accident, here a recurrent ruptured disc at L5-S1 on the right, arising out of and in the course of his employment by defendant. Defendants deny plaintiff's allegations.
6. The parties stipulated the following exhibits into the evidence of record at the hearing before Deputy Commissioner Jones:
a. Stipulated Exhibit 1 — plaintiff's medical records prior to July 31, 2002
b. Stipulated Exhibit 2 — plaintiff's medical records for the period of July 29, 2002 through the date of the hearing before Deputy Commissioner
c. Stipulated Exhibit 3 — plaintiff's physical therapy records
d. Stipulated Exhibit 4 — Industrial Commission Forms and filings
7. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner by the parties:
a. Plaintiff's Exhibit 1 — plaintiff's employment history
b. Plaintiff's Exhibit 2 — plaintiff's wage statement
c. Plaintiff's Exhibit 3 — plaintiff's responses to defendants' interrogatories
d. Plaintiff's Exhibit 4 — return of subpoena
e. Plaintiff's Exhibit 5 — return of subpoena
f. Defendants' Exhibit 1 — Form 19
g. Defendants' Exhibit 2 — statement by Ollie Lennis and Richard Gibson
8. Defendants paid plaintiff $265.00 per week in short-term disability benefits for the period of August 12, 2002 through November 28, 2002 for which they are entitled to a reduction under N.C. Gen. Stat. § 97-42.
9. The issues before the Commission are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendants on July 28, 2002, and if so, to what compensation, if any, is plaintiff entitled?
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-five years old and had completed high school.
2. Prior to working for defendants, plaintiff had worked as a machine operator, a maintenance worker, a brick mason helper and a forklift operator.
3. Plaintiff was employed with defendants on July 13, 1996 as a grocery manager. Plaintiff's supervisor was Richard Shelton.
4. In 1998, plaintiff had an admittedly compensable back injury while employed by defendants. In 1999, Dr. Harlan B. Daubert performed surgery on plaintiff's back at L5-S1 and assigned plaintiff a five percent permanent partial disability rating.
5. Plaintiff had no residual problems as result of his 1998 injury and had not seen a doctor for back problems until July 28, 2002.
6. As a grocery manager, plaintiff was required to stock the shelves regularly and to be sure that all products were on the shelves. Plaintiff received deliveries on Wednesday and Sunday.
7. On July 28, 2002, plaintiff reported to work at 10:00 p.m. Ollie Lennis, Richard Gibson, and Robert Manion were also working.
8. Between 3:00 a.m. and 4:00 a.m., plaintiff was stocking canned goods on aisle four. Mr. Manion was stocking the other side of the aisle. Plaintiff bent over and picked up a case of canned vegetables weighing about ten pounds when he felt a sharp low back pain and right leg pain. Plaintiff began screaming in pain.
9. Mr. Manion approached plaintiff who said he had thrown his back out. The other employees assisted plaintiff to the office. Plaintiff remained in the office until Mr. Shelton arrived. Plaintiff explained to Mr. Shelton that he had hurt his back and Mr. Shelton instructed him to go home.
10. Plaintiff went home and did not return to work on July 30, 2002. Plaintiff told his wife to contact Mr. Shelton and tell him that he was unable to work. Plaintiff's wife took the keys to the store to Mr. Shelton.
11. On July 31, 2002, plaintiff could not get out of bed and went to the emergency room at Forsyth Medical Center. Plaintiff was examined and diagnosed with acute lower back pain and spasms. Plaintiff was referred to Dr. Craig Cregan. Dr. Cregan diagnosed plaintiff with a limp on the right side and observed that he was unable to "heal to toe" walk on his right side secondary to pain.
12. Dr. Cregan felt plaintiff had symptoms from his L4-5 disc and recommended an MRI scan be performed. Dr. Cregan wrote plaintiff out of work.
13. Plaintiff's MRI revealed a bulging disc at L4-5.
14. On August 20, 2002, Dr. Daubert advised plaintiff to have a repeat surgical disc excision at L5-S1 and plaintiff elected to proceed with the surgery.
15. Plaintiff had a right L5-S1 microdiscectomy on September 11, 2002.
16. On October 28, 2002, plaintiff returned to Dr. Daubert and indicated the pain in his right hip was no longer present. Plaintiff was experiencing some pain in his interior thighs as well as tightness in both hamstrings. Dr. Daubert recommended physical therapy and prescribed Celebrex once a day.
17. Dr. Daubert released plaintiff to return to regular duty on December 1, 2002.
18. Dr. Daubert felt plaintiff's work stocking the shelves for defendants was a causal factor in the recurrent herniated disc.
19. Plaintiff timely contacted Mr. Shelton when he was released by Dr. Daubert to return to work. Mr. Shelton contacted plaintiff on the morning of December 1, 2002 and informed plaintiff that his position had been filled and that there was no work available with defendants. Plaintiff was told this decision had been made at the direction of Jeff Harris, district manager. Plaintiff was told to contact Jeff Harris for possible openings.
20. Plaintiff spoke with Mr. Harris on December 2, 2002 and Mr. Harris told plaintiff he was unable to accommodate plaintiff's request for full time work. Plaintiff was told part time work one to two days a week was available in Thomasville. The job paid $6.50 an hour. Thomasville was a 40 mile commute one way for plaintiff. Plaintiff indicated to Mr. Harris he needed full time employment and declined the Thomasville job offer.
21. Plaintiff sought employment that would restore him to a similar position to that he was in prior to his injury. After a reasonable job search, on December 27, 2002, plaintiff began working as the dairy/frozen food clerk for Winn Dixie in Walkertown, 15 miles from his home. The Winn Dixie job is less physically demanding than his job with defendants and requires a maximum lifting of 10 pounds.
22. Plaintiff's average weekly wage at his new job for the period of time from December 27, 2002 through March 12, 2003 was $364.94.
23. The Full Commission finds that the Thomasville part-time job was not suitable employment because of the commute and the substantial reduction in position and pay. Plaintiff did not unjustifiably refuse this employment.
24. Dr. Daubert felt plaintiff reached maximum medical improvement in April 2003 and assigned plaintiff an additional five percent permanent partial impairment rating to his back.
25. The Full Commission finds by the greater weight of the credible evidence plaintiff was disabled from his low back injury and unable to earn wages in any employment from July 29, 2002 until December 26, 2002.
26. After December 27, 2002, plaintiff's wages were less than he was earning at the time of his injury by accident and plaintiff's decreased ability to earn wages was due to his disability resulting from the compensable injury by accident.
27. Defendants have not defended this action without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 28, 2002, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury by accident, plaintiff was totally disabled and is entitled to receive temporary total disability compensation from July 29, 2002 through December 26, 2002. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit for payments of $265.70 per week from August 12, 2002 through November 28, 2002 for short-term disability payments. N.C. Gen. Stat. § 97-42.
4. Plaintiff did not unjustifiably refuse suitable employment such that his benefits should be suspended. N.C. Gen. Stat. § 97-32.
5. After December 27, 2002 plaintiff showed that he continued to be partially disabled by producing evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson Sports Ltd.Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000), aff'd per curiam,353 N.C. 520, 546 S.E.2d 87 (2001); Bond v. Foster Masonry, Inc.,139 N.C. App. 123, 532 S.E.2d 583 (2000).
6. Plaintiff is entitled to partial disability benefits at the rate of two-thirds of the difference between his average weekly wage before the injury and the wages he was able to earn thereafter beginning December 27, 2002 for a maximum of 300 weeks from the date of injury or until he earns the same wages as he did before his compensable injury. N.C. Gen. Stat. § 97-30.
7. Plaintiff is entitled to receive medical treatment for his compensable injury by accident so long as said treatment should effectuate a cure, provide relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
8. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $311.96 per week from July 29, 2002 through December 26, 2002. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved below.
2. Defendants are entitled to a credit for payments of $265.70 per week from August 12, 2002 through November 28, 2002 for the payment of short-term disability.
3. For plaintiff's partial disability compensation, defendants shall pay plaintiff two-thirds of the difference between $467.92 and $364.94 beginning December 27, 2002 through March 12, 2003. Thereafter, if there is any change in plaintiff's average weekly wage, defendants shall pay 2/3 of the difference between plaintiff's average weekly wage as of the compensable injury and the reduced wages he earns, beginning March 13, 2003 and continuing for 300 weeks from the date of injury. Said amount is subject to an attorney's fee in Paragraph 5.
4. Defendants shall pay all medical expenses resulting from plaintiff's compensable injury by accident on July 28, 2002.
5. Defendants shall pay plaintiff's counsel 25% of all compensation paid plaintiff as a reasonable attorney fee.
6. Defendants shall pay the costs.
This the 8TH day of January 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb