The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence. Upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of Deputy Commissioner Donovan.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. On the date of the alleged injury, an employee-employer relationship existed between the named employee and named employer. That employment relationship began on or about April 19, 1999. The relationship ended by termination on or about May 11, 2007, due to defendant-employer's inability to reasonably accommodate plaintiff's work restrictions.
3. Plaintiff sustained a compensable injury by accident on or about September 20, 2006, which was initially accepted via a Form 60. The parties acknowledge dispute of the compensability of the injuries for which benefits are currently being claimed by plaintiff.
4. Temporary total disability benefits were initiated and paid at the rate of $526.89 from September 21, 2006, through on or about May 27, 2008, when plaintiff returned to work for another employer.
5. All parties are correctly named in the above caption. On the alleged injury date, the North Carolina Association of County Commissioners Workers' Compensation Pool was the insurer on the risk and Sedgwick CMS was the servicing agent.
6. Plaintiff's average weekly wage for the purpose of this action was $790.30, resulting in a compensation rate of $526.89 per week.
7. Plaintiff received $632.00 in unemployment benefits from the Employment Security Commission for February 7, 2009 through March 11, 2009, while he was unemployed. Defendants are entitled to a credit in that amount against any temporary total disability benefits awarded as part of this claim. *Page 3 
8. On or about May 27, 2008, plaintiff began working for West Customer Management Group, LLC (West), earning $10.00 per hour. Plaintiff was terminated from West on or about October 5, 2008. During plaintiff's employment with West, he earned gross wages totaling approximately $7,076.16, with the exact amount to be determined by the Commission.
9. Plaintiff was paid temporary partial disability benefits while employed by West at the rate of two-thirds of the difference between his pre and post injury average weekly wages.
10. On or about March 11, 2009, plaintiff began working part-time for Wake County Public Schools (WCPS) as a bus driver at Millbrook Transportation earning $12.25 per hour. Effective August 24, 2009, plaintiff was activated as a full-time employee, eligible for benefits. Plaintiff is currently employed by WCPS working full time as a bus driver.
11. The following exhibits were stipulated into evidence:
 a. Stipulated Exhibit #1: Industrial Commission forms, medical records, bills, discovery, Employment Security Commission records, employment records and recorded statement.
 *********** ISSUES
1. Whether plaintiff is disabled, and if so, is plaintiff's current disability causally related to the September 20, 2006 injury by accident;
2. Whether plaintiff is entitled to recover benefits under the North Carolina Workers' Compensation Act, including ongoing medical treatment and payment of medical bills for injuries allegedly sustained in the September 20, 2006 injury by accident;
3. Whether plaintiff has elected his remedy between N.C. Gen. Stat. §§ 97-30 and 97-31; *Page 4 
4. Whether plaintiff unjustifiably refused suitable employment.
 ***********
Based upon all of the competent evidence in record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old. Plaintiff completed the ninth grade and then obtained his adult high school diploma in 1988. Plaintiff was hired by defendant-employer as a water treatment operator on April 19, 1999. Plaintiff's job duties included performing labs in order to check water quality, checking tank levels, confirming pumps and equipment were working properly, and taking care of the grounds.
2. On or about September 20, 2006, plaintiff sustained an injury to his neck while using a weed eater. Plaintiff reported his injury to his supervisor immediately after the incident. Plaintiff was sent for treatment with Nova Urgent Care Center on the date of injury. Physician's assistant Charles Kober diagnosed plaintiff with a neck injury and took plaintiff out of work pending an MRI. The MRI revealed a mild focal central disc bulge without spinal cord compression at right C5-6, and Mr. Kober referred plaintiff to a spine specialist.
3. On October 9, 2006, plaintiff presented to Dr. Robert Lacin. Dr. Lacin stated that plaintiff's "physical examination was absolutely normal. He had no neurological deficits, in other words, any loss of function. Spurling's maneuver, which is a maneuver that checks for irritability of a nerve in the neck, was normal. Plaintiff had a little bit of discomfort when he extended his neck, but other than that, he was — his physical examination was normal." *Page 5 
4. Dr. Lacin noted a small disk herniation at right C6-7 and opined that it might be the source of plaintiff's pain. Because Dr. Lacin was unable to definitively determine the cause of plaintiff's pain, he referred him to a physiatrist for further evaluation and treatment.
5. On November 6, 2006, plaintiff presented to Dr. Michael Gwinn. Dr. Gwinn recommended physical therapy and took plaintiff out of work. Subsequently, plaintiff was given an injection, which failed to provide relief. Dr. Gwinn continued to treat plaintiff conservatively through January 2007, and plaintiff was kept out of work for this period.
6. In February 2007, plaintiff was reevaluated by Dr. Lacin who recommended that plaintiff "just leave this alone" and wait for it to get better. He opined that while plaintiff was not at maximum medical improvement, he could return to sedentary work; however, defendant-employer did not have a position for plaintiff within his restrictions.
7. On February 7, 2007, plaintiff returned to Dr. Gwinn and reported that his pain had improved approximately 50% since his treatment began. Dr. Gwinn noted the recommendation of Dr. Lacin and provided restrictions of light duty work with no lifting over 15 pounds, avoid repetitive above-chest or overhead activities, avoid jarring and jolting, no dump truck driving, and lifting up to 15 pounds occasionally. If no light duty jobs within these restrictions were available, Dr. Gwinn recommended a work conditioning program.
8. As defendant-employer did not have work within plaintiff's restrictions, on March 7, 2007, Dr. Gwinn recommended work conditioning for plaintiff. Plaintiff continued with therapy and on April 7, 2007, Dr. Lacin noted plaintiff was at maximum medical improvement with a permanent partial disability rating of 3% to his back. Dr. Lacin also opined that plaintiff was able to perform medium duty work. *Page 6 
9. On April 12, 2007, Dr. Gwinn recommended six additional therapy sessions to be followed by a functional capacity evaluation. Plaintiff has not returned to Dr. Gwinn. The functional capacity evaluation was denied by defendants. Defendants hired vocational case manager Kimberly Knowles to assist plaintiff in obtaining employment within the restrictions imposed by Dr. Lacin.
10. Plaintiff enrolled in classes at Johnston Community College and continued his job search. On May 27, 2008, on his own initiative, plaintiff located employment at West, providing telephonic assistance to customers who had technical difficulties with their cellular phones. Plaintiff did not have any prior customer service experience. Plaintiff drove an hour each way to work and received training for the position from West, subsequent to his hiring. Plaintiff earned $10.00 per hour and worked between 30 and 40 hours per week. Defendants paid plaintiff temporary partial disability compensation equal to two thirds of the difference between his post and pre injury wages pursuant to a Form 28 and Form 62 during his employment with West.
11. Plaintiff's reports to Ms. Knowles and his employee reviews while at West indicated he was happy in the position and performing his job duties satisfactorily. However, plaintiff was terminated by West on October 6, 2008. Plaintiff contends that he was terminated due to the effect his neck injury had on his ability to concentrate and perform his duties along with the inadequate training he received. Ms. Knowles stated that she was unsure why plaintiff was terminated since she did not contact West directly after the firing. The Full Commission finds plaintiff's testimony credible and based on the greater weight of the evidence, finds that plaintiff was terminated for reasons in part related to his compensable injury by accident and that *Page 7 
plaintiff's termination from employment did not constitute a constructive refusal of suitable employment.
12. Plaintiff notified Ms. Knowles of his termination and she sought approval from defendant-employer to provide further assistance in plaintiff's job search. Defendants denied Ms. Knowles request and refused to authorize additional vocational rehabilitation assistance to plaintiff.
13. Plaintiff continued his job search for employment, without assistance and on his own. Plaintiff completed bus training, without pay in December, 2008, seeking the required qualifications and credentials to assist him in obtaining employment as a bus driver. On March 11, 2009, plaintiff obtained employment as a temporary, part-time bus driver for Wake County. On August 24, 2009, plaintiff obtained a full-time position with Wake County as a bus driver, earning $12.25 an hour. Plaintiff's job duties include constantly monitoring the students and driving the bus. Plaintiff noted that certain roads cause him to experience neck pain due to the bumpy road conditions, but he is otherwise able to perform the duties of the job.
14. The Full Commission finds, based upon the greater weight of the evidence, that plaintiff made reasonable, but unsuccessful efforts to find suitable employment within his physical limitations during the period of his unemployment, from October 7, 2008 to March 10, 2009.
15. On September 20, 2006, plaintiff sustained an admittedly compensable injury by accident to his neck arising out of and in the course of his job duties with defendant-employer, which defendants accepted as compensable. For periods from the date of injury until plaintiff's October 6, 2008 termination from West, plaintiff was totally and partially disabled from employment, for which defendants have already paid temporary total and temporary partial *Page 8 
disability compensation. Plaintiff was capable of some work but was unable to obtain suitable employment after a reasonable job search from October 7, 2008 to March 10, 2009. After March 11, 2009, plaintiff was capable of earning reduced wages when he began employment with Wake County.
16. Plaintiff's inability to return to his pre-injury employment with defendant-employer, earning his pre-injury wages, is due to the restrictions imposed by his treating physicians, related to plaintiff's injury by accident of September 20, 2006.
17. Plaintiff's average weekly wage was $790.30, resulting in a compensation rate of $526.89 per week.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on September 20, 2006. N.C. Gen. Stat. § 97-2(6). 2. From the date of injury through plaintiff's employment with West, defendants properly paid plaintiff temporary total and temporary partial disability to which he was entitled during that period. N.C. Gen. Stat. §§ 97-29, 97-30.
3. Plaintiff elected to receive benefits pursuant to N.C. Gen. Stat. § 97-30 as opposed to taking his rating when he began working for West. See, Gupton v. Builders Transp.,320 N.C. 38, 357 S.E.2d 674 (1987).
4. From October 7, 2008 until March 10, 2009, plaintiff met his burden to prove that he was capable of some work but after a reasonable effort was unable to obtain employment. *Page 9 
N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Defendants did not provide any vocational rehabilitation services to plaintiff to aid him in finding employment during that time period. Plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendant of temporary totaldisability compensation at the rate of $526.89 per week beginning October 7, 2008 and continuing until March 10, 2009. N.C. Gen. Stat. § 97-29.
5. There is no evidence that following plaintiff's termination from West, the restrictions imposed by plaintiff's treating physicians were no longer in effect. Further, there is no evidence that defendants had suitable employment within plaintiff's restrictions. After March 11, 2009, plaintiff showed he continued to be partially disabled through evidence that after a reasonable job search, he obtained other employment at wages less than those earned prior to the compensable injury. Larramore v. Richardson SportsLtd. Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000),aff'd per curiam, 353 N.C. 520, 546 S.E.2d 87 (2001). Plaintiff's return to work for Wake County as a bus driver reinstated his eligibility for temporary partial disability compensation beginning on March 11, 2009 and continuing for a maximum of 300 weeks from September 20, 2006, pursuant to N.C. Gen. Stat. § 97-30.
6. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his injury by accident for so long as such examinations, evaluations and treatments tend to effect a cure, give relief, or lessen his disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 10 
 AWARD
1. Subject to a reasonable attorney's fee approved below and a setoff for unemployment benefits, defendants shall pay total disability compensation to plaintiff from October 7, 2008 to March 10, 2009. Thereafter, defendants shall pay plaintiff temporary partial disability compensation equal to two-thirds of the difference between his post and pre injury wages, beginning on March 11, 2009 and continuing for a maximum of 300 weeks from the date of injury. Amounts that have accrued shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, plaintiff's counsel shall receive every fourth payment.
3. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his injury by accident for so long as such examinations, evaluations and treatments tend to effect a cure or give relief.
4. Defendants shall pay the costs.
This the 30th day of August, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 11 
 S/___________________ DANNY LEE McDONALD COMMISSIONER