* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms in part, and reverses and remands in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * RULING ON MOTION
On 5 December 2005, Plaintiff filed a motion to admit additional evidence consisting of records from Coldwell Banker and additional testimony by Plaintiff regarding his return to work for Coldwell Banker. On 9 December 2005, Defendants filed an objection to Plaintiff's motion. The Full Commission herein grants Plaintiff's motion to admit additional evidence.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 7 March 2004, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between Plaintiff and Defendant-Employer. Travelers Insurance Company was the workers' compensation insurance carrier on the risk.
3. On 7 March 2004, Plaintiff sustained a right knee injury as a result of an accident arising out of and in the course of his employment with Defendant-Employer.
4. Plaintiff's average weekly wage is disputed.
5. The issues for determination are:
a. What is Plaintiff's average weekly wage?
 b. Whether there is any statutory basis for suspending or terminating Plaintiff's compensation for total disability?
 c. Whether Plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1
for defending Defendants' applications to suspend or terminate payments of total disability compensation?
 c. Whether Defendants are entitled to a credit in the amount of temporary total disability paid over and above the bargained for 2004 salary?
 d. Whether Plaintiff is entitled to temporary partial disability compensation?
6. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Plaintiff's wage records, discovery responses, medical records, employment contract, correspondence, I.C. Forms, Carolina Cobra schedule, carrier payments.
7. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Salary cap manual for Arena Football League
 b. Defendants' Exhibit #2: Collective Bargaining Agreement
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 29 years old. After graduating from college in 1998, Plaintiff had been employed as a professional football player until 7 March 2004. He has played in the NFL for the Detroit Lions, St. Louis Rams, Dallas Cowboys, Philadelphia Eagles, and Kansas City Chiefs, in NFL Europe for the Frankfort Galaxy, in the CFL for the Toronto Argonauts, and in the AFL for the Georgia Force and the Carolina Cobras. The seasons of the various leagues do not, for the most part, overlap. Plaintiff has played in more than one league during a single calendar year.
2. On or about 20 October 2003, Plaintiff signed on to play for the Carolina Cobras in the AFL for the season beginning in February 2004. Plaintiff's salary for the 16-game season was $37,000.00. In addition to his salary, Plaintiff received the following allowances: housing at $675.00 per month, electric power service at $90.00 per month, water service at $25.00-$50.00 per month, cable television at $50.00 per month, washer-dryer rental at $35.00 per month, furniture rental at $300.00 per month, and per diem allowance for meals at away games of $100.00 per day for eight away games. The season consisted of 15.8571 weeks, beginning on 8 February 2004 and ending on 29 May 2004.
3. The per diem payments for reimbursement of meal costs were not made in lieu of wages and do not constitute income. However, the Full Commission finds as fact that with the exception of the per diem meal reimbursement payments, the additional payments for housing and related expenses were made in lieu of wages and do constitute income for Plaintiff and should be calculated as a part of his average weekly wage.
4. Because Plaintiff worked less than 52 weeks in the year preceding his injury by accident, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Further, because of the nature of professional football, fair and just results cannot be obtained by calculating the average weekly wage based on the actual weeks Plaintiff worked prior to his injury; therefore, the third method provided in N.C. Gen. Stat. § 97-2(5) may not be utilized. No evidence has been presented of the average weekly wage of an employee of the same grade and character as Plaintiff and in the same locality or community earned in the 52 weeks preceding Plaintiff's injury by accident; therefore, it is impossible to calculate Plaintiff's average weekly wage according to the fourth method provided in N.C. Gen. Stat. § 97-2(5).
5. For the reasons stated, the first four methods of calculating average weekly wage would be unfair to the parties. The Full Commission finds that since Plaintiff was contractually obligated to get in shape to play and to play for Defendant-Employer during the period covered by his contract, determining Plaintiff's average weekly wage by dividing his income and allowances in lieu of wages by the number of weeks in the period from the date the contract was executed on 24 October 2003 through the date his contract ended on 30 June 2004, would produce a result which would more accurately approximate the amount that Plaintiff would be earning were it not for his injury, and will provide a result which is fair and just to both parties. Using the fifth method as set forth above, Plaintiff's average weekly wage was $1170.40, which yields a compensation rate of $780.31. The maximum weekly compensation rate for 2004 is $688.00.
6. On 7 March 2004, during the fifth game of the 2004 season, Plaintiff injured his right knee while blocking another player. Dr. Jerry Barron, the Cobra's team physician, diagnosed Plaintiff with a complete ACL tear and a tear of his lateral cartilage. Plaintiff underwent surgery for both injuries on 22 March 2004.
7. Defendant-Employer continued Plaintiff's salary through the end of the season and Defendants began paying Plaintiff temporary total disability compensation in the amount of $474.37, based upon an average weekly wage of $711.54 ($37,000.00 ÷ 52). In September 2004, Defendants adjusted Plaintiff's average weekly wage to include payments for housing and utilities and began paying Plaintiff weekly compensation of $533.97, based upon an average weekly wage of $800.95. Defendants paid Plaintiff the new amount retroactively to 7 March 2004, and continued to pay Plaintiff compensation at this rate through the date of hearing before the Deputy Commissioner.
8. Following his surgeries, Plaintiff underwent a course of physical rehabilitation, including physical therapy three times weekly. While undergoing physical therapy, Plaintiff completed a course of study to become a licensed North Carolina real estate agent. Plaintiff passed the licensure examination and received his license in September or October 2004. At the time of the hearing before the Deputy Commissioner, Plaintiff had not pursued this line of employment due to lacking funds for activation fees, and his interest in returning to football. Plaintiff twice requested that Defendants assist him in his effort to return to work as a real estate agent by paying the fees on his behalf. Plaintiff deemed such assistance to be vocational assistance. Defendants did not respond to Plaintiff's requests for assistance.
9. The signing period for the AFL runs from October through December each year. In October 2004, Plaintiff began inquiring into whether Defendant-Employer was interested in re-signing him for the upcoming season. Plaintiff received no response.
10. At some point in the Fall of 2004, Defendant-Employer decided not to field a team for the 2005 season. Although previous players were not notified of the decision, Plaintiff heard rumors and began inquiring about the possibility of playing for other AFL teams. Plaintiff contacted and sought employment with AFL teams in Tampa, Florida; Detroit, Michigan, Nashville, Tennessee; Columbus, Ohio; and Los Angeles, California. Plaintiff also sought employment with the Georgia Force for whom he played in 2003.
11. When Plaintiff attended his appointment with Dr. Barron on 22 November 2004, he informed Dr. Barron of his hope of playing for the Georgia Force. Due to his belief that he would be offered a contract to play for the Georgia Force, Plaintiff requested that Dr. Barron clear him to return to playing football. At that time, Plaintiff continued to have atrophy and loss of quadriceps tone. He also had crepitus of the patellofemoral. In terms of his physical abilities, Plaintiff was unable to run as fast as before his injury. He lacked the stamina and strength he possessed prior to his injury. Additionally, he had difficulty planting his foot and moving laterally.
12. On 22 November 2004, Dr. Barron cleared Plaintiff to return to football with the restriction that he wear a knee brace while playing to minimize the possibility of re-injuring his knee. Dr. Barron opined that Plaintiff had reached maximum medical improvement and assigned Plaintiff a 20% permanent partial disability rating to his right leg. Dr. Barron opined that Plaintiff would never regain all the strength in his knee that he had prior to the injury, but the strength Plaintiff had was "good and appropriate for return" to football.
13. Plaintiff was unsuccessful in his attempts to re-join the AFL. None of the teams contacted by Plaintiff gave him an opportunity to try out or offered him a contract. Mr. Ronald R. Selesky, a former coach for the Cobras and current coach of the Columbus Destroyers, stated in his 4 April 2005 response to a questionnaire that they did not offer Plaintiff a position because the players they already had, or were trying to sign were a better fit for their team. Mr. Selesky opined, however, that should a need arise, they would consider hiring Plaintiff. In a prior letter dated 2 January 2005, Mr. Selesky stated that his decision not to offer Plaintiff a position was based on "the extent and severity of his knee injury, along with any future complications that could potentially arise for [Plaintiff] re-injuring his knee."
14. Additionally, Plaintiff testified that as of the date of the hearing before the Deputy Commissioner, he continued to experience popping and stiffness in his knee. He had diminished speed, leg strength, and stamina. He lacked the ability to move laterally that he possessed prior to his injury. Dr. Barron agreed that that as a result of his knee injury, Plaintiff's knee "is not 100%" and is "never going to be like it was before." Dr. Barron corroborated Plaintiff's testimony that as a result of his knee injury, he has diminished endurance, decreased running speed, difficulty planting his foot and moving laterally. According to Dr. Barron, individuals who sustain a ruptured ACL may not return to their previous levels of physical performance. An ACL tear may be career ending.
15. The Full Commission finds that Plaintiff made reasonable and diligent job search efforts through the date of the hearing before the Deputy Commissioner. Plaintiff contacted at least six AFL teams, his former agent, and made other professional contacts. He also renewed his request that Defendants provide him with some vocational assistance by paying his real estate activation fee.
16. The fees required for Plaintiff to start selling real estate constitute the costs of starting a business. Such costs are not contemplated to be a part of the vocational rehabilitation process.
17. Plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of his employment with Defendant-Employer on 7 March 2004. As a result of the injury by accident, Plaintiff was totally disabled from 7 March 2004 through the date of the hearing before the Deputy Commissioner and continuing until his return to work with Coldwell Banker on 1 March 2005.
18. Defendant-Employer continued Plaintiff's salary from the date of his injury through 31 May 2004. Beginning on 1 June 2004 and continuing through the date of the hearing, Defendant-Carrier paid Plaintiff compensation for total disability at the rate of $533.97 per week.
19. Since Plaintiff began working for Coldwell Banker after the hearing before the Deputy Commissioner, there is insufficient evidence to determine his wage earning capacity upon return to work.
20. Plaintiff is entitled to elect between compensation for his permanent impairment of 20% to the leg pursuant to N.C. Gen. Stat. § 97-31, and compensation for diminished earning capacity pursuant to N.C. Gen. Stat. § 97-30, whichever is his most munificent remedy.
21. Plaintiff's medical treatments were reasonable and necessary to provide relief, effect a cure or lessen the period of disability.
22. Defendants have not defended this claim unreasonably.
23. The Full Commission has granted Plaintiff's motion to admit additional evidence. Therefore, this matter should be remanded to the Deputy Commissioner Section for a hearing on the wages Plaintiff was able to earn upon his return to work.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment with Defendant-Employer on 7 March 2004. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wage must be calculated by the best method to provide fair and just results to all parties. Because Plaintiff had worked less than 52 weeks at the time of his injury by accident, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Further, because of the nature of professional football, fair and just results cannot be obtained by calculating the average weekly wage based on the actual weeks Plaintiff worked prior to his injury; therefore, the third method provided in N.C. Gen. Stat. § 97-2(5) may not be utilized. No evidence has been presented of the average weekly wage of an employee of the same grade and character as Plaintiff and in the same locality or community earned in the 52 weeks preceding Plaintiff's injury by accident; therefore, it is impossible to calculate Plaintiff's average weekly wage according to the fourth method provided in N.C. Gen. Stat. § 97-2(5).
3. For the reasons given, the Full Commission concludes that the fifth method of computing average weekly wages will most nearly approximate the amount in which Plaintiff would be earning were it not for his injury and would be fair to the parties. Therefore, the Full Commission finds that determining Plaintiff's average weekly wage, including allowances, by dividing his total income by the total weeks covered by the written contract period will most accurately approximate the amount which Plaintiff would be earning were it not for his injury and will provide a result which is fair and just to both parties. See Larramore v.Richardson Sports Ltd., d/b/a Carolina Panthers,141 N.C. App. 250, 540 S.E.2d 768 (2000).
4. An employee's average weekly wages include "allowances of any character made to an employee in lieu of wages." N.C. Gen. Stat. § 97-2(5). The reimbursement payments Plaintiff received for money spent on meals at away games were not made in lieu of wages and do not constitute a part of Plaintiff's average weekly wages. The payments for housing at $675.00 per month, electric power service at $90.00 per month, water service at $25.00-$50.00 per month, cable television at $50.00 per month, washer-dryer rental at $35.00 per month, and furniture rental at $300.00 per month, are allowances made in lieu of wages and should be included in the computation of Plaintiff's average weekly wage. N.C. Gen. Stat. § 97-2(5).
5. Using the fifth method, Plaintiff's average weekly wage was $1170.40, which yields a compensation rate of $780.31. N.C. Gen. Stat. § 97-2(5). The maximum weekly compensation rate for 2004 is $688.00.
6. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent. Perkins v. U.S. Airways, 628 S.E.2d 402, ___ N.C. App. ___ (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In this case, Plaintiff produced evidence that as a result of his injury, he was unable to return to work as a professional football player, he has a twenty percent (20%) permanent impairment of his leg and he has conducted a reasonable, yet unsuccessful job search. Additionally, Plaintiff testified that as of the date of the hearing before the Deputy Commissioner, he continued to experience popping and stiffness in his knee. He had diminished speed, leg strength, and stamina. He lacked the ability to move laterally that he possessed prior to his injury. Dr. Barron agreed that that as a result of his knee injury, Plaintiff's knee "is not 100%" and is "never going to be like it was before." Dr. Barron corroborated Plaintiff's testimony that as a result of his knee injury, he has diminished endurance, decreased running speed, difficulty planting his foot and moving laterally. According to Dr. Barron individuals who sustain ruptured ACLs may not return to their previous levels of physical performance. An ACL tear may be career ending. Therefore, Plaintiff met his burden of proving disability.
7. As a result of the compensable injury, Plaintiff is entitled to temporary total disability compensation at $688.00 per week for the period from 7 March 2004 through the date of hearing before the Deputy Commissioner and continuing until his return to work on 1 March 2005. N.C. Gen. Stat. § 97-29.
8. Defendants are entitled to a credit against the compensation due Plaintiff for temporary total disability compensation already paid to Plaintiff.
9. Upon returning to work, Plaintiff is entitled to elect between compensation for his permanent partial impairment pursuant to N.C. Gen. Stat. § 97-31, and compensation for diminished earning capacity pursuant to N.C. Gen. Stat. § 97-30, whichever is his most munificent remedy. Gupton v. BuildersTransport, 320 N.C. 38, 357 S.E.2d 674 (1987).
10. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of his compensable injury for so long as such treatment may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
11. Plaintiff is not entitled to attorney's fees from Defendants pursuant to N.C. Gen. Stat. § 97-88.1, as Defendants had reasonable grounds to defend this claim.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation at $688.00 per week for the period from 7 March 2004, through the date of hearing before the Deputy Commissioner and continuing until his return to work on 1 March 2005.
2. Defendants are given a credit for the compensation for temporary total disability already paid to Plaintiff.
3. The record in this case is reopened for additional evidence and the Plaintiff is entitled to elect between compensation for his permanent partial impairment pursuant to N.C. Gen. Stat. §97-31, and compensation for diminished earning capacity pursuant to N.C. Gen. Stat. § 97-30, whichever is his most munificent remedy.
4. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff herein is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel.
5. Defendants shall pay medical expenses incurred or to be incurred by Plaintiff as a result of his injury, when bills for the same have been approved in accordance with the provisions of the Act.
6. Defendants shall pay the costs.
 ORDER
This matter is reopened and remanded to the Deputy Commissioner Section for a hearing on Plaintiff's wage earning capacity after his return to work on 1 March 2005. The Deputy Commissioner shall gather the evidence and forward the hearing transcript and other evidence gathered to the Full Commission for entry of a final Opinion and Award.
This the __ day of July 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER