***********
The Full Commission reviewed the prior Opinion and Award with reference to the errors assigned by defendant based upon the record of the proceedings before Chief Deputy Commissioner Taylor and the briefs and oral arguments of the parties. Defendants have not shown good grounds to reconsider the evidence, to receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with some modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award. *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage is $419.02.
5. The employee sustained a compensable injury by accident on October 3, 2007.
6. The injury arose out of and in the course of employment and is compensable.
7. Defendants accepted liability for employee's fractured left foot which occurred on October 4, 2007.
8. Employee was paid temporary total disability benefits at a rate of $253.32 per week from October 4, 2007 through April 2, 2008.
9. Employee was assigned a five (5) percent permanent partial disability rating to his left foot by Dr. Hage on March 17, 2008 as a result of his compensable injury.
10. The parties stipulated into evidence, as Stipulated Exhibit 1, the following:
 • I.C. Forms;
 • Employee's Medical Records; and
 • Discovery Responses.
 *********** EVIDENTIARY RULING *Page 3 
In addition to Stipulated Exhibit 1, the following were received into evidence:
 • Plaintiff's Exhibit 1: Work Restrictions;
 • Plaintiff's Exhibit 2: Mailbox Refurbishing Job Description; and
 • Plaintiff's Exhibit 3: March 14, 2008 letter from Mr. S. Neal Camak to Ms. Rosa Britt.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born December 5, 1960 and is currently 49 years old. He completed the eleventh grade and has since obtained a GED. He served in the military for seven years. Plaintiff has work experience in landscaping and cooking. Most of plaintiff's prior work experience is as a chef, a profession in which he is licensed. For several years, plaintiff ran his own catering business until he went out of business. The majority of plaintiff's work experience required standing. Prior to October 3, 2007, plaintiff had no foot complaints.
2. On July 16, 2007, plaintiff was hired at Fred Smith Companies to work as a landscaper. Plaintiff worked in the Hedingham Community, a golf course community in Wake County. In this position, plaintiff operated a ride-behind mower, which required the operator to stand on the mower. He also used a backpack leaf blower. He worked eight hours a day with one hour for lunch. Plaintiff's job required that he stand most, if not all, of his working hours. Plaintiff was initially paid $9.00 per hour, which increased to $9.50 per hour on August 13, 2007.
3. On October 3, 2007, at approximately 12:50 p.m., plaintiff and a co-worker took a landscape gator tractor to get ice for the rest of the grounds crew. The co-worker lost control of *Page 4 
the gator because the brake cable broke and jumped off of it. Plaintiff also had to jump off the gator and landed on his feet before rolling to the ground. When plaintiff tried to get up, he could not put weight on his left foot.
4. As a result of his injury, plaintiff was taken to Concentra Medical Centers, an urgent care facility, and then to WakeMed. X-rays taken at WakeMed showed that plaintiff had fully displaced mid-shaft fracture of the fifth metatarsal and an avulsion fracture of the fifth metatarsal. Dr. William Andersen placed plaintiff in a non-weight bearing boot for three weeks, at which time he was to return for follow-up. Dr. Andersen advised plaintiff to use crutches and released him to "sitting only" work. Plaintiff did not return for follow-up at Concentra Medical Centers.
5. On October 8, 2007, Plaintiff presented to the emergency room at Rex Healthcare in Raleigh. Plaintiff was diagnosed with a fracture in his foot, told to use ice and elevate the foot, to continue with the boot, and to remain non-weight bearing. Plaintiff was referred for follow-up care to Triangle Orthopaedic Associates, P.A. Plaintiff did not return to work or seek to return to work with Fred Smith Companies at this time.
6. After an initial delay, defendants accepted plaintiff's claim and began paying temporary total disability benefits to plaintiff dating back to October 4, 2007.
7. Plaintiff was referred to Dr. William D. Hage, a board-certified orthopaedic surgeon, for further treatment. Dr. Hage first treated plaintiff on October 11, 2007, a little more than a week after his date of injury. On physical examination, he noted swelling and tenderness along the lateral side of plaintiff's left foot. Based on the x-rays and examination, Dr. Hage diagnosed plaintiff with a left ankle sprain and two fractures, and a fifth metatarsal fracture of the shaft and the base. As explained by Dr. Hage, the fifth metatarsal is the small bone which runs *Page 5 
along the outside of the foot and connects the base of the foot to the small toe. Plaintiff's avulsion fracture of the bone was the separation of a small bone from the end of the shaft which attaches to the foot. Plaintiff's shaft fracture was a fully displaced fracture at the base of the little toe. Dr. Hage thought the boot was appropriate and told plaintiff to gradually start putting more weight on the foot as he could tolerate. He prescribed crutches for another 3 weeks. Dr. Hage was of the opinion that no surgery was needed but that plaintiff would be in a boot for 6 to 8 weeks. He asked plaintiff to return in 4 weeks for repeat x-rays. Dr. Hage did not believe surgery would be necessary.
8. Following this initial visit, Dr. Hage continued to see and treat plaintiff through March 17, 2008. Over the course of his treatment of plaintiff, Dr. Hage prescribed orthotics and anti-inflammatory medications for pain. Plaintiff's fractures did not heal as quickly as normal for the kind of fractures he had suffered. X-rays taken in January 2008 showed plaintiff's foot was still in the process of healing but had not yet fully healed. As of March 17, 2008, however, plaintiff's fractures were healed.
9. Dr. Hage initially kept plaintiff out of work after the work-related injury, then released him to light-duty on January 14, 2008, alternating between sitting and standing every hour for the next two months. Plaintiff was not at the point where he could stand all day. Ms. Ava Martinez, defendant-employer's payroll manager, confirmed at the hearing that defendant-employer did not have light-duty work available for plaintiff.
10. On March 17, 2008, plaintiff's final visit, Dr. Hage noted the plaintiff was doing much better, as long as he was wearing his orthotics. However, plaintiff was experiencing some pain along the inside arch of his left foot. X-rays revealed the fracture had healed, but plaintiff had developed some arthritic changes which were the source of the pain. Dr. Hage was of the *Page 6 
opinion that the arthritis pain was caused by the work injury's exacerbation of pre-existing arthritic changes in plaintiff's foot and causing them to become symptomatic, and there is no way to apportion the relative contributions to plaintiff's current foot pain of the pre-existing arthritic changes and the exacerbation of this arthritic condition due to the work-related injury.
11. Plaintiff's arthritic pain was treatable with orthotics and with anti-inflammatories. Accordingly, Dr. Hage determined that further medical visits with an orthopaedic surgeon were unnecessary. On March 17, 2008, Dr. Hage concluded that plaintiff was at maximum medical improvement and released him from care with a five (5) percent permanent partial impairment rating to the foot. Dr. Hage was of the opinion that in the future, plaintiff will need anti-inflammatory medications and orthotics.
12. With respect to work restrictions, Dr. Hage's March 17, 2008 medical records noted plaintiff was released without restrictions. However, he filled out a work restriction form listing restrictions of no lifting more than twenty (20) pounds and no standing or walking for more than four (4) hours per day. When questioned about this inconsistency, Dr. Hage admitted that he signed the work restriction form and felt that it was reasonable for plaintiff to have relied on the restrictions set out in the work restriction form.
13. Dr. Hage further testified that his "full duty release" was a statement of his opinion that plaintiff could safely work at any level he wanted without risking further injury or permanent damage to the structures and tissues of his foot. However, he did not mean by this release that plaintiff could work at any level without pain. Dr. Hage expected that plaintiff would experience pain with activity due to the objectively verifiable arthritic changes documented by the most recent x-rays and he felt it was reasonable for plaintiff to limit his activities based upon that pain. He did not think plaintiff should return to any job in a long-term capacity which would cause his *Page 7 
arthritis to be painful. He testified that a more appropriate explanation of plaintiff's limitations is that he should return to work "as tolerated." Dr. Hage also recommended a functional capacity examination to better assess plaintiff's limitations.
14. The Full Commission finds as fact that it was reasonable for plaintiff to conclude he was under work restrictions upon his medical release on March 17, 2008. Plaintiff's regular job with defendant-employer as a laborer is outside the restrictions written by Dr. Hage. Plaintiff continues to have flare-ups of foot pain, especially with prolonged activity.
15. After he was released to return to work on March 17, 2008, plaintiff did not contact anyone at defendant-employer about a return to work. Instead, he applied for work as a busboy or cook at the Ramada Inn/Blue Ridge on March 17, 2008, the same day as his release by Dr. Hage. Under the salary required section of the job application, plaintiff listed $8.50 per hour. Plaintiff testified that he listed $8.50 as his requested pay rate only because the prospective employer told him to indicate that amount in order to be hired. Plaintiff was hired and began work at the Ramada Inn/Blue Ridge on March 18, 2008, at a rate of pay of $8.00 per hour. Plaintiff looked for no other work before accepting this job. He informed defendants of his return to work after successfully completing a week of work. Defendants paid temporary total disability benefits to plaintiff for approximately two weeks after his return to work.
16. Plaintiff did not seek to return to work with defendants because he did not believe defendants had any job for him within the restrictions indicated by Dr. Hage on the work restriction form upon which he relied, as his pre-injury job with defendant-employer required the ability to lift in excess of fifty (50) pounds. He also did not believe he could sustain the kind of laborer job available with defendant-employer based on ongoing symptoms in the left foot. The Full Commission finds plaintiff's testimony to be credible. *Page 8 
17. Ramada Inn/Blue Ridge pay records show that plaintiff worked there full-time for three (3) months, through June 15, 2008, when he quit that job because he did not get enough hours. While there, plaintiff occasionally had to work in excess of the restrictions given on Dr. Hage's work restriction form because he had to spend substantial amounts of time on his feet. He found that, when he violated these restrictions, his foot would flare up, and he would occasionally be forced to limp. Despite these flare-ups, plaintiff worked until his hours were reduced substantially.
18. Plaintiff then returned to work soon afterwards with Able Body Labor, a temporary employment service. Plaintiff looked for no other jobs before taking a job through Able Body Labor. When he was hired at Able Body Labor, plaintiff filled out a medical questionnaire. On this form, plaintiff denied any recent injuries or disabilities. He also denied having any permanent physical conditions. Plaintiff completed this form in this manner because he feared that he would not be hired if he disclosed his left foot injury, and he needed a job. Able Body Labor placed him in a number of temporary jobs, though none that he performed was as heavy as the job with defendant-employer.
19. Plaintiff's initial job at Able Body Labor was as a mover, which he worked on June 18, 2008, and earned $10.00 per hour for four (4) hours. During this four (4)-hour period he earned a higher hourly wage than he earned per hour with defendant-employer. While at Able Body Labor, plaintiff also worked as a cook and parking lot attendant. Plaintiff worked at Able Body Labor at varying rates of pay and between eight (8) and nine and one-half (9½) hours per day. He worked there through August 4, 2008, when he quit that job due to reduced hours.
20. On August 4, 2008, plaintiff applied for work and was hired at Link Staffing, another temporary service. Plaintiff moved to Link Staffing because the work was more stable. *Page 9 
Plaintiff looked for no other jobs before accepting the job with Link Staffing. When plaintiff was hired at Link Staffing, he was asked to perform a functional assessment. This assessment showed that plaintiff was able to toe touch, climb a ladder, lift weight and perform squats without restriction.
21. At Link Staffing, plaintiff was initially given an assignment at Wal-Mart. This assignment ended after a month and he worked other jobs for Link Staffing, including jobs at a hotel, in a bindery department, and as a parking lot attendant. Around November 2008, plaintiff was contacted by another Wal-Mart and offered a full-time position as a maintenance associate. In this job, plaintiff performs cleaning work throughout the store. Plaintiff was still working at Wal-Mart as a maintenance associate as of the date of the hearing before the Chief Deputy Commissioner.
22. Beginning March 11, 2008, which was prior to Dr. Hage's determination that plaintiff had reached maximum medical improvement, plaintiff began looking for work on his own, without vocational assistance, and made reasonable efforts to find suitable employment thereafter. He has attempted to earn the highest wage he possibly can and has never intentionally depressed his earnings.
23. Although the Ramada Inn/Blue Ridge and subsequent jobs paid plaintiff less than he earned with defendant-employer, defendants refused to pay plaintiff temporary partial disability benefits.
24. Defendants contend that plaintiff's disability ended as a matter of law on March 17, 2008 when he was released to full-duty work, without restriction, and thus retained no physical impairment of his earning capacity. Defendants further contend that plaintiff has not *Page 10 
proven he was temporarily totally disabled after January 14, 2008 when Dr. Hage released him to light-duty work.
25. Plaintiff's multiple attempts at returning to work, which initially resulted in finding the first job only a day after his release from care by Dr. Hage, indicate that he is motivated to return to work. As of January 14, 2008 when Dr. Hage released plaintiff to return to light-duty work, he had not reached maximum medical improvement, his foot was still healing and he had the additional restriction of having to alternate between sitting and standing every hour. Defendant-employer had no work for plaintiff within these restrictions. The Full Commission finds that it would have been futile for plaintiff to look for employment under these circumstances during the period from January 14, 2008 to March 17, 2008, considering his past work history and educational level. The Full Commission also finds that plaintiff made reasonable efforts, under the circumstances, to find suitable employment after March 17, 2008, even though there were short periods of time when he did not work while looking for work or waiting on job assignments. The decisions plaintiff made concerning his job choices and job search were reasonable, under the circumstances. The Full Commission further finds that plaintiff's actual earnings are indicative of his wage-earning capacity, except for the one job that he performed for four (4) hours and earned $10.00 per hour.
26 Defendants have underpaid plaintiff by not paying compensation based upon plaintiff's accurate average weekly wage. The amount due plaintiff as a result of the underpayment exceeds any credit defendants might be due for the period plaintiff received compensation after he returned to work.
27. On March 17, 2008, Dr. Hage completed a Form 18M, Employee's Application for Additional Medical Compensation, in which he indicated that Plaintiff did not need additional *Page 11 
medical care. He stated that plaintiff may occasionally need over-the-counter anti-inflammatory medication, like ibuprofen, and new orthotics approximately every two years. Dr. Hage reiterated that plaintiff had no need for future orthopaedic care and needed no more diagnostic tests or procedures. Plaintiff has not sought medical care since March 17, 2008. Although Dr. Hage completed and signed an 18M indicating that plaintiff did not require future medical treatment, during his deposition he indicated that plaintiff would need new orthotics every two years as well as ongoing anti-inflammatory medication. Thus, the evidence as a whole indicates that Dr. Hage was of the opinion that plaintiff bears a substantial risk of needing replacement orthotics every two years as well as ongoing anti-inflammatory medication.
28. Defendants brought this appeal and the Full Commission by its decision herein is ordering defendants to continue payment of benefits to plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes following:
 CONCLUSIONS OF LAW
1. An employee may meet his burden of proving disability in one of four ways:
 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). *Page 12 
2. Work for lower wages after an injury, while not dispositive of disability, shifts the burden to the employer to establish that the employee could have obtained higher earnings. Larramore v.Richardson Sports, Ltd. Partners,141 N.C. App. 250, 540 S.E.2d 768 (2000), aff'd per curiam,353 N.C. 520, 546 S.E.2d 87 (2001). In this case, plaintiff made a reasonable effort to find suitable employment and found employment earning lesser wages. However, defendants have failed to meet their burden of proving that plaintiff was capable of earning wages greater than those he earned in his attempts at returning to work following March 17, 2008. Therefore, plaintiff has proven disability under the fourth Russell factor. Russell,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
3. For the periods of time plaintiff was completely out of work after his medical release, he has proven disability using the second Russell factor. Plaintiff diligently sought work with multiple employers. He returned to work the day after Dr. Hage released him at maximum medical improvement. Even though there were short periods of time when he did not work while looking for work or waiting on job assignments following March 17, 2008, the decisions plaintiff made concerning his job choices and job search were reasonable, under the circumstances. Defendants did not provide any vocational rehabilitation services to plaintiff to aid him in finding higher paying jobs. Id.
4. Plaintiff has proven disability under the thirdRussell factor during the period from January 14, 2008 when Dr. Hage released him to return to light-duty work to March 17, 2008. Plaintiff had not reached maximum medical improvement, his foot was still healing and he had the additional restriction of having to alternate between sitting and standing every hour. Defendant-employer had no work for plaintiff within these restrictions and it would have been futile for *Page 13 
plaintiff to look for employment under the circumstances during this period considering his past work history and educational level.Id.
5. A release to return to work with no specific restrictions does not automatically rebut a showing of disability by the plaintiff. The greater weight of the evidence establishes that plaintiff's release to work after March 17, 2008 was a release to work "as tolerated" and does not rebut the presumption of disability.Cummins v. BCCI, 149 N.C. App. 180, 560 S.E.2d 369 (2002).
6. Defendants are liable for ongoing temporary partial disability benefits for up to 300 weeks from the date of injury, unless plaintiff returns to work at pre-injury wages, or it is otherwise ordered by the Commission. N.C. Gen. Stat. § 97-30.
7. Plaintiff bears a substantial risk of the necessity of and is entitled to future medical care, including replacement orthotics every two (2) years or as necessary and over-the-counter anti-inflammatory medications. N.C. Gen. Stat. § 97-25.1.
8. Plaintiff is entitled to payment for the underpayment of compensation and defendant is entitled to a credit offset for the period plaintiff received temporary total disability compensation while working.
9. Plaintiff is responsible for payment of his share of the mediation fee.
10. Plaintiff is entitled to attorney fees as a part of costs for defending this appeal. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD *Page 14 
1. Defendants shall pay to plaintiff temporary partial disability benefits in the amount of two-thirds (2/3) of the difference between plaintiff's pre-injury wage and his post-injury wage during his past, present, and future return to work attempts for a period lasting 300 weeks from October 4, 2007 unless plaintiff returns to work at pre-injury wages, or it is otherwise ordered by the Commission. All accrued amounts shall be paid in one lump sum. All amounts awarded in this paragraph are subject to the attorneys' fee awarded in Paragraph 4.
2. Defendants shall also pay to plaintiff the balance of the previous underpayment of temporary total disability benefits. The accrued amounts shall be paid in one lump sum. The amount awarded in this paragraph is subject to the attorneys' fee awarded in Paragraph 4 and the credit allowed defendants.
3. Defendants shall provide plaintiff with future medical care for his compensable left foot condition, including replacement orthotics every two (2) years, and over-the-counter anti-inflammatory medications.
4. An attorney's fee of twenty-five percent (25%) is approved as a reasonable attorney's fee for plaintiff's attorney and shall be deducted directly from the amounts owed to plaintiff and paid directly by defendants to plaintiff's attorney. In the future, defendants shall forward twenty-five percent (25%) of future indemnity payments directly to plaintiff's counsel on a weekly basis.
5. Defendants are allowed a credit for the approximately two (2) weeks of overpayment of compensation to plaintiff.
6. Plaintiff's counsel is awarded an attorney fee under N.C. Gen. Stat. § 97-88 for the time expended in defending this appeal to the Full Commission. Plaintiff's counsel shall submit an *Page 15 
affidavit to the Industrial Commission showing time spent defending this appeal and making any other showing in support of an attorney fee award.
7. Defendants shall pay the costs of these proceedings.
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER *Page 1